**James HARMON, III, # 080164,**
**Petitioner–Appellant,**

v.

**Tom L. BARTON, Robert Butterworth,**
**Respondents–Appellees.**

**No. 88–3754.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 20, 1990.

Daniel A. Smith, Jacksonville, Fla., for petitioner-appellant.

John M. Koenig, Jr., Asst. Atty. Gen., Director, Crim. Appeals, Dept. of Legal Affairs, Tallahassee, Fla., for respondents-appellees.

---

Before TJOFLAT, Chief Judge, HATCHETT, Circuit Judge, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

James Harmon III, a Florida prisoner, appeals from the district court's judgment denying his petition for habeas corpus relief. Because the state court clearly and expressly stated that its decision rested on an independent and adequate state procedural ground, we refuse to address the merits of petitioner's claim for habeas corpus relief. Accordingly, we affirm the district court's order.

## FACTS AND PROCEDURAL BACKGROUND

In 1981, Harmon, who was then 17 years old, pleaded guilty to two counts of second degree murder, one count of armed robbery, and one count of kidnapping. In a separate case, he was convicted by a jury of one count of armed robbery and one count of kidnapping. In total, Harmon was adjudicated guilty of committing six felonies, each "punishable by imprisonment for a term of years not exceeding life imprisonment" pursuant to Sections 782.04(2), 787.-01(2), and 812.13(2)(a), Fla.Stat. (1981). When the pleas were taken, the court advised Harmon that the maximum sentence on each count was life imprisonment, but that there was no plea agreement as to the sentence. Instead of life sentences, the court imposed six consecutive terms of one hundred years each and retained jurisdiction to deny him parole during the first one-third of the total sentence, or for two hundred years. Harmon's attorney objected that the court could not legally retain

jurisdiction over a period greater than Harmon's actual lifetime, but did not move to withdraw the guilty pleas.

Harmon appealed, arguing that the court erred in sentencing him to six hundred years and retaining jurisdiction for two hundred years because the sentence exceeded the statutory maximum. Harmon requested correction of the sentences, but did not request withdrawal of the pleas. The appellate court affirmed and certified the following issue to the Florida Supreme Court: "[W]hether a sentencing court, authorized to impose for each of six felonies a term of years not exceeding life imprisonment, may impose six consecutive 100–year terms and retain jurisdiction for one-third of each sentence, aggregating 200 years, to review any parole release order of the Parole Commission." The Florida Supreme Court accepted jurisdiction, answered the question affirmatively, and upheld the convictions and sentences. *Harmon v. State*, 438 So.2d 369 (Fla.1983).

On September 18, 1985, Harmon filed his first state motion for post-conviction relief which was denied on February 2, 1986. On February 13, 1987, Harmon filed a second motion for post-conviction relief pursuant to Rule 3.850, Fla.R.Crim.P., alleging that he should be allowed to withdraw his guilty pleas as involuntary because the court did not advise him that it could sentence him to one hundred year terms and retain jurisdiction for two hundred years. The state court, without an evidentiary hearing, denied Harmon's motion on March 5, 1987. The court found that Harmon's claim was procedurally barred because he should have, but did not raise it on direct appeal, or in the previous motion for post-conviction relief, and he did not explain his failure to raise the claim earlier.[1] On Novem-

1. In denying Harmon's motion, the state court stated in pertinent part the following:

 Defendant's argument is that he should have been informed at the time of his plea negotiations that the trial court intended to retain jurisdiction and that he would now like to withdraw his previously entered guilty pleas. This argument should have been raised at the time when defendant appealed his sentence; a motion under Rule 3.850 can-

 not be utilized for a second appeal to consider issues that either were raised in the initial appeal or could have been raised in that appeal. *Jones v. State*, 446 So.2d 1059 (Fla. 1984).

 Movant's petition did not contain the following information as required by Rule 3.850: Movant had previously filed a Post-Conviction Motion on September 18, 1985, which was denied on February 2, 1986; [ ] he gives

ber 20, 1987, the state appellate court affirmed without comment.

On February 17, 1988, Harmon filed this federal habeas corpus petition in the Middle District of Florida alleging that the state court did not advise him before he pleaded guilty that the court could retain jurisdiction over a portion of his sentence. He sought to withdraw his pleas. In a report and recommendation, the magistrate found that Harmon's claim was procedurally barred because it was not raised on direct appeal, and that Harmon had not shown cause and prejudice. Over Harmon's objections, the district court adopted the magistrate's recommendation and denied the petition.[2] This appeal followed.

## DISCUSSION

### A. *Procedural Default*

■ Considerations of comity and concerns for the orderly administration of criminal justice preclude federal courts from entertaining a petition for a writ of habeas corpus without restriction.[3] One such limitation is procedural default. Under clear authority beginning with *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a state habeas corpus petitioner who fails to raise his federal constitutional claim in state court is proce-

durally barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default. 433 U.S. at 87, 97 S.Ct. at 2506. *See also Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). We have held that where the state court correctly applies a procedural default principle of state law, *Sykes* requires the federal court to abide by the state court's decision. *Meagher v. Dugger*, 861 F.2d 1242 (11th Cir.1988) (citing *Ratcliff v. Estelle*, 597 F.2d 474, 478 (5th Cir.), *cert. denied*, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979)).

In Florida, a motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 cannot be utilized for a second appeal to consider issues that either were raised on direct appeal or could have been raised in that appeal.[4] *See, e.g., Jones v. State*, 446 So.2d 1059 (Fla.1984); *McCrae v. State*, 437 So.2d 1388 (Fla.1983); *Armstrong v. State*, 429 So.2d 287 (Fla.1983); *Ford v. State*, 407 So.2d 907 (Fla.1981). Moreover, Rule 3.850 imposes a procedural bar to successive motions for such relief when the issue could have been raised in a previous motion:

> A second or successive motion may be dismissed if the judge finds that it fails to allege new or different grounds for

no reason why the claim he raises now was not raised then, as required by the Rule....

2. The district court judgment, adopting the magistrate's report and recommendation, is based upon the following finding of procedural default by the magistrate:

> [T]he court is barred from reaching the merits of Petitioner's claim based on the doctrine of procedural default. Petitioner's failure to comply with state procedural requirements bars federal habeas review of his alleged constitutional violations absent a showing of cause for the default and prejudice resulting from the errors of which he complains. [citations omitted].
>
> \* \* \* \* \* \*
>
> In reviewing the state appellate record, the state court refused to address the merit of the issue argued in this petition on the grounds it should have been raised in his original appeal some six years ago. Accordingly, because the Petitioner has failed to preserve the issue presented herein, he has waived this claim unless he can show cause and prejudice. He

has not done so. Consequently, this court cannot consider the Petitioner's ground for relief.

3. We recognize that "the role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited. Federal courts are not forums in which to relitigate state trials." *Barefoot v. Estelle*, 463 U.S. 880, 887, 103 S.Ct. 3383, 3391–92, 77 L.Ed.2d 1090 (1983). Federal habeas corpus "imposes special costs on our federal system" because "[f]ederal intrusions into state criminal trials frustrate both the states' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).

4. Fla.R.Crim.P. 3.850 provides in pertinent part:

> This rule does not authorize relief based upon grounds which could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence.

relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the movant or his attorney to assert those grounds in a prior motion constitutes an abuse of the procedure governed by these rules.

The Supreme Court of Florida has held that this provision, effective January 1, 1985, imposes upon prisoners filing successive motions the affirmative duty of demonstrating why the grounds therein were not contained in the first motion.[5] *Christopher v. State*, 489 So.2d 22, 24 (Fla.1986); *Tanner v. State*, 502 So.2d 1008 (Fla.Dist. Ct.App.1987). In order to establish justification for the failure to raise the issue in the first motion, for example, the petitioner could show in his petition that there had been a change in the law since the first motion or that there are facts relevant to issues in the cause that could not have been discovered at the time the first motion was filed. *Witt v. State*, 465 So.2d 510 (Fla.1985).[6]

In the present case, Harmon alleges that his plea was involuntary because he was not informed that the trial court could retain jurisdiction over one-third of his sentence. This issue could have been raised on direct appeal, *see, e.g., Schmidt v. State*, 464 So.2d 1302 (Fla.Dist.Ct.App.1985); *Mrozowski v. States*, 444 So.2d 587 (Fla. Dist.Ct.App.1984), and in a motion to vacate and set aside the sentence. *See, e.g., Green v. State*, 406 So.2d 1148 (Fla.Dist.Ct.

App.1981), *aff'd, State v. Green*, 421 So.2d 508 (Fla.1982). It also could have been raised in a motion for post-conviction relief pursuant to Rule 3.850. *See, e.g., Murray v. State*, 469 So.2d 940 (Fla.Dist.Ct.App. 1985); *Stanley v. State*, 501 So.2d 90 (Fla. Dist.Ct.App.1987); *Fowler v. State*, 443 So.2d 125 (Fla.Dist.Ct.App.1983). The state court concluded that, consistent with state law, Harmon was procedurally barred from pursuing his claim because he neither raised the issue on direct appeal nor raised it in his first post-conviction motion and did not explain his failure to raise the claim earlier.[7]

In the recent decision of *Harris v. Reed*, — U.S. —, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), the Supreme Court made clear that the "plain statement rule" of *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), applies in federal habeas corpus proceedings. Under the *Long* rule, if a state court issues a "plain statement" that its decision rests on an independent and adequate state ground, then even if the state court issues an alternative ruling based on its interpretation of federal law, federal courts should not address the merits of the federal claim. 463 U.S. at 1041, 103 S.Ct. at 3476. If a state court's reasons for rejecting the claim are ambiguous, however, federal review is not precluded. *Id.*

The habeas petitioner in *Harris* violated a state procedural bar rule by not raising his ineffective assistance of counsel claim

---

**5.** This amendment, because it is procedural in nature only, is retroactive. *Stewart v. State*, 495 So.2d 164 (Fla.1986).

**6.** The comparable federal rule against abuse of successive petitions in habeas cases is contained in Rule 9(b), Rules Governing Sec. 2254 Cases. *See generally Moore v. Zant*, 885 F.2d 1497, (11th Cir.1989) (en banc) (outlining the federal standards and exceptions to the abuse of the writ doctrine). We recognize, however, that the important federalism concerns make state procedural defaults materially different from the abuse of the writ problem involving successive federal habeas petitioner. *Cf. Engle*, 456 U.S. at 134, 102 S.Ct. at 1575 (federal habeas challenges to state convictions entail "special comity concerns" not present on direct review of federal convictions).

**7.** Although not expressly addressed by either the state or federal courts, on the date petitioner filed his second post-conviction motion in which he first raised his constitutional issue, the time for filing a Fla.R.Crim.P. 3.850 motion had expired. Under Rule 3.850, defendants whose convictions became final prior to January 1, 1985, were required, absent excuse for delay, to file post-conviction motions before January 1, 1987. Harmon's judgments and sentences became final on September 1, 1983, *Harmon v. State*, 438 So.2d 369 (Fla.1983), and he filed the second motion on February 13, 1987. Harmon's failure to file his second motion by January 1, 1987, and his failure to explain the delay, provide further evidence of his procedural default. *See Demps v. State*, 515 So.2d 196 (Fla. 1987), (petitioner procedurally barred from post-conviction relief due to failure to file timely request under Rule 3.850).

on direct appeal. When he raised this claim at the post-conviction relief stage, the state appellate court dismissed the claim without clearly relying on the state procedural bar as an independent ground for dismissal. The state appellate court's opinion made only ambiguous references to the applicable state procedural bar, while going on to rely on federal law in rejecting petitioner's ineffectiveness claim on its merits. The *Harris* Court recognized that "the problem of ambiguous state-court references to state law ... is common to both direct and habeas review." In an attempt to find "a common solution" to this problem, the Court held that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris*, 109 S.Ct. at 1043 (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 2638, 86 L.Ed.2d 231 (1985)).

In view of the recent Supreme Court decision in *Harris*, the question presented is whether the per curiam affirmance of the trial court's ruling in this case is a clear and express statement of reliance on a state procedural bar. Harmon argues that a state per curiam affirmance without a written opinion should be construed as a decision on the merits because the appellate court, as the "last state court render-

ing a judgment," did not clearly and expressly state that its judgment rests on a state procedural bar.[8] *See id.*, 109 S.Ct. at 1043. The state contends that affirmance without comment of a decision explicitly based on a procedural bar is unambiguous and is factually distinguishable from *Harris*.

It is, of course, incumbent upon this court to ascertain for itself whether the state court clearly and expressly rejected petitioner's claim on the basis of an independent and adequate state procedural ground. *Long*, 463 U.S. at 1038, 103 S.Ct. 3469; *see also Ulster County Court v. Allen*, 442 U.S. 140, 148–49, 99 S.Ct. 2213, 2220, 60 L.Ed.2d 777 (1979). Such a determination necessarily involves an analysis of state law concerning the effect of a per curiam affirmance of a trial court decision to summarily deny post-conviction relief which expressly relies on the ground of procedural default for its result.

Under Florida law, a decision by an unwritten per curiam affirmance "is not a precedent for a principle of law and should not be relied upon for anything other than res judicata." *Department of Legal Affairs v. District Court of Appeal*, 434 So.2d 310, 313 (Fla.1983). Moreover, a per curiam affirmance decision rendered without opinion cannot be reviewed by the state supreme court. *Jenkins v. State*, 385

---

8. In addition, Harmon implicitly argues that *Harris* is to have retroactive application. Although this court has not directly addressed the issue, we proceed under the assumption that the plain statement rule announced in *Harris* applies to cases decided prior to *Harris*'s date of decision. We note that the vast majority of courts faced with resolution of *Harris*-type issues have not hesitated to apply the case retroactively, albeit without addressing whether retroactivity is a concern. *See Rease v. Dugger*, No. 88–3754 (M.D.Fla. August 25, 1989) (citing *Booker v. Lynaugh*, 872 F.2d 100, 101 (5th Cir. 1989); *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1450 (9th Cir.1989); *Nieto v. Sullivan*, 879 F.2d 743, 746 (10th Cir.1989); *Fagon v. Bara*, 717 F.Supp. 976, 987 (E.D.N.Y.1989); *Roller v. McKellar*, 711 F.Supp. 272, 276–77 (D.S.C.1989); *Edgar v. Trickey*, 708 F.Supp. 1090, 1092 n. 2 (W.D.Mo.1989); *Waye v. Townley*, 871 F.2d 18, 19 (4th Cir.1989); cf. *Parker v. Dugger*, 876 F.2d 1470, 1476–78 (11th Cir.1989); *Owens v. Treder*,

873 F.2d 604, 611 (2d Cir.1989)). This conclusion is supported by the Supreme Court's action in vacating and remanding other cases in light of *Harris, see, e.g., Meadows v. Holland*, — U.S. ——, 109 S.Ct. 1306, 103 L.Ed.2d 575 (1989), *vacating* 831 F.2d 493 (4th Cir.1987) (en banc); *Sparks v. Foltz*, — U.S. —— 109 S.Ct. 1306, 103 L.Ed.2d 576 (1989), *vacating* 848 F.2d 194 (6th Cir.1988) (Table), a result which would be inconsistent with an intention to apply *Harris* prospectively only. Moreover, a fair reading of the *Harris* decision strongly suggests that the plain statement rule in the habeas context represents the application of well-settled principles of constitutional law, not a departure from them. *See Teague v. Lane*, 489 U.S. ——, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion) (announcing a general rule prohibiting the retroactive application of a "new" principle of constitutional law cases that are "final" at the time those laws are announced).

So.2d 1356 (Fla.1980).[9] As a general rule, it is a device utilized to avoid "merely repeat[ing] well established principles and further burden[ing] attorneys with their research." *Whipple v. State,* 431 So.2d 1011, 1016 (Fla.Dist.Ct.App.1983) (footnote omitted).

Fla.R.App.P. 9.140(g) sets forth the procedure to be followed where there is a summary denial without a hearing for post-conviction relief under Fla.R.Crim.P. 3.850. Pursuant to Rule 9.140(g), denial of a 3.850 motion without a hearing will be reversed and remanded for an evidentiary hearing "[u]nless the record shows conclusively that the appellant is entitled to no relief...." The Rule further provides that "[n]o briefs or oral argument shall be required." Absent unusual circumstances, the appellate panel will request the state to file a response in any 3.850 appeal only where it initially appears to the panel that the trial court's order should be reversed. *Toler v. State,* 493 So.2d 489, 491 (Fla.Dist. Ct.App.1986). The Rule's assumption appears to be that most appeals from rulings without a hearing under Fla.R.Crim.P. 3.850 can be disposed of without briefs and without participation by the state.[10] *Id.* Under these streamlined procedures, the clear inference to be drawn from the appellate court's per curiam affirmance of the trial court's decision explicitly based on procedural default is that the court accepted not only the judgment but the reasoning of the trial court.

The "plain statement" rule, it should be emphasized, applies only when an ambiguity exists in the state court disposition. A per curiam affirmance decision "does not create ambiguity to an otherwise unambig-

uous situation, just as it does not clarify ambiguity that exists based on the decision below." *Rease v. State,* No. 88-3754 (M.D. Fla. Aug. 25, 1989). Stated differently, the plain statement rule should not be applied to create an ambiguity where one did not exist simply because the appellate court, by its per curiam affirmance, elected not to restate an unambiguous lower court ruling. We conclude that the court's per curiam affirmance of the trial court's ruling explicitly based on procedural default is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts.

Unlike the state appellate court in *Harris* and other cases involving the *Long* plain statement, the state appellate court in this case did not issue a written opinion in which it made an ambiguous reference to state procedural bar while relying on federal law for its decision. The court's per curiam affirmance without comment of the lower court's ruling which expressly relied on procedural default does not require this court to speculate on what basis the state court denied petitioner's claim. The rationale behind the Court's decision in *Harris*—which is to relieve federal courts "from having to determine whether in a given case, consistent with state law, the state court has chosen to forgive a procedural default"—is equally applicable here. 109 S.Ct. at 1044 n. 11. Under these circumstances, the policy considerations discussed in *Harris* are not compromised by applying the plain statement rule to the last state court that rendered judgment *and* provided reasons for the judgment.[11]

---

9. Under Florida's present constitutional scheme, the district courts of appeal engage primarily in the so-called error-correcting function to ensure that every litigant receives a fair trial. This system frees the supreme court to discharge its judicial policy-making function of clarifying the law and promulgating new rules of law. *Whipple v. State,* 431 So.2d 1011, 1014 (Fla.Dist.Ct. App.1983). The Supreme Court's jurisdiction under Art. V, Sec. 3(b), of the Florida Constitution is not without controversy. *See e.g.,* Anstead, *Selective Publication: An Alternative to the PCA?,* 34 U.Fla.L.Rev. 189 (1982); Overton, *A Prescription for the Appellate Caseload Explosion,* 12 Fla.St.U.L.Rev. 205, 211–12 (1984);

Scheb, *Florida's Courts of Appeals: Intermediate Courts Become Final,* 13 Steton L.Rev. 479, 491–511 (1984)).

10. Apparently, from the record before us, no briefs were filed, no oral argument was heard, and the appellate court made no request for the state to respond before ruling.

11. This conclusion is consistent with this court's recent ruling in *Parker v. Dugger,* 876 F.2d 1470 (11th Cir.1989), that failure to present a claim to the state court cannot create an ambiguity concerning the waiver of the state court's procedur-

Approximately one month prior to *Harris,* this court released an opinion addressing the issue of whether a per curiam affirmance by a Florida state appellate court would support the finding of procedural default on a habeas corpus petition. *Bennett v. Fortner,* 863 F.2d 804 (11th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 2077, 104 L.Ed.2d 641 (1989). In *Bennett,* the state trial court denied a claim in petitioner's 3.850 motion based on procedural default, but went on to address the merits of the claim as an alternative basis for denying relief. 863 F.2d at 806; *see Harris,* 109 S.Ct. at 1044 n. 10 ("[a] state court need not fear reaching the merits of a federal claim in an *alternative* holding") (emphasis in original). The state appellate court affirmed per curiam without a written opinion. We correctly applied a form of the plain statement rule by holding that "when a federal court is unable to determine whether or not a state court is applying procedural bar, this court will reach the merits of the issue." *Bennett,* 863 F.2d at 807 (citing *Campbell v. Wainwright,* 738 F.2d 1573, 1577 (11th Cir.1984)).

In concluding that procedural default was the principal basis for the state court's denial of relief, we noted that the situation where a lower court simply denies the habeas corpus petition without comment differs from the Rule 3.850 proceeding in that no other court opinion provides any guidance as to whether the court reached the merits.[12] In this case, as in *Bennett,* the state trial court's ruling on petitioner's 3.850 motion provided the basis for the state appellate court's per curiam affirmance. After discussing the procedural default issue in the context of a 3.850 motion, the court went a step further by adopting the reasoning of *O'Bryan v. Estelle,* 714 F.2d 365, 384 (5th Cir.1983). The *O'Bryan* court, in addressing the question of when a state court's per curiam affirmance will support the finding of procedural default, applied three criteria. First, whether the

state had used procedural default in similar cases; second, whether the history of the case would suggest that the trial court was aware of procedural default; and third, whether a state court's opinion suggested reliance on procedural grounds or a determination on the merits. *Id.* at 384. In light of *Harris,* application of *O'Bryan's* imprecise criteria to a state court per curiam affirmance is no longer adequate. Before this court can deny the petition on the grounds of state procedural default, there must have been a clear and express statement by the state trial court that its judgment was based upon procedural default. This court can then conclude without any doubt that the state court per curiam affirmance was also based upon that ground.

### B. *The "Cause and Prejudice" Standard*

 Finding that Florida's procedural rule constitutes an adequate ground for denying petitioner collateral review of his claim, we now address whether Harmon has demonstrated the cause and actual prejudice that would prevent application of *Sykes.* Neither pro se litigants, *Alexander v. Dugger,* 841 F.2d 371, 374 n. 3 (11th Cir.1988), nor claims barred by a state's successive petition rule, *Presnell v. Kemp,* 835 F.2d 1567, 1577–78 (11th Cir.1988), are exempted from the cause and prejudice requirement. *Smith v. Newsome,* 876 F.2d 1461, 1465 (11th Cir.1989). The petitioner argues that he has demonstrated cause and prejudice and is thus entitled to an evidentiary hearing in the district court on the merits of his claim. We disagree.

Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court "has not given the term 'cause' precise content." *Reed v. Ross,* 468 U.S. 1, 13, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1 (1984). The Supreme Court has suggest-

---

al bar rules. *See id.* at 1478 (adopting rationale from Justice O'Conner's concurrence in *Harris,* 109 S.Ct. at 1046–47).

**12.** We believe that the advice in *Harris* to state courts on stating their reliance on procedural

grounds in form orders, 109 S.Ct. at 1044 n. 12, was addressed to this situation where the lower court simply denies the habeas petition without comment.

ed, however, that cause should ordinarily turn on some objective factor external to the petitioner. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2646, 91 L.Ed.2d 397 (1986). The Court explained that "a showing that the factual or legal basis for a claim was not reasonably available ..., or that 'some interference by officials' made compliance impracticable, would constitute cause under this standard." *Id.* (citation omitted). *See Meagher v. Dugger*, 861 F.2d 1242 (11th Cir.1988) (where petitioner's late receipt of notice of parole violation, which indicated that the unexpired portion of federal sentence would run consecutively to state sentence, prevented him from asserting his involuntariness claim earlier).

As cause for the procedural default of the involuntariness claim, Harmon cites only his pro se status in the post-conviction proceedings. Petitioner offers no other excuse for his failure to challenge the voluntariness of his plea, and we discern none that would amount to good cause to overcome a state procedural default. The factual and legal basis for a challenge under state law was plainly available to petitioner at the time he brought his first state habeas petition. *See Green v. State*, 406 So.2d 1148 (Fla.Dist.Ct.App.1981), *aff'd, State v. Green*, 421 So.2d 508 (Fla.1982) ("[I]f a judge wishes to retain jurisdiction, a defendant must be advised, prior to pleading guilty or nolo contendere, that the court can retain jurisdiction over a part of his sentence.") Moreover, petitioner does not argue that the Florida courts have failed to consistently or regularly apply its procedural rules. *See Spencer v. Kemp*, 781 F.2d 1458, 1470 (11th Cir.1986) (state procedural rules that are not strictly or regularly followed cannot deprive the federal courts of the right of review).

In *Smith*, the petitioner raised his constitutional claim for the first time in his second state habeas petition. As cause for this default, petitioner cited "his illiteracy and lack of ability to understand the state habeas proceedings." 876 F.2d at 1465. The court found this explanation to be insufficient cause for the state procedural default. The facts in this case are even less compelling since Harmon's sole explanation is that he was representing himself. Similar to the conclusion in *Smith*, we find that this is not a case where an issue is intrinsically beyond the pro se petitioner's ability to present. Indeed, Harmon, in his second state habeas petition, advanced pro se the involuntariness claim which he failed to present earlier. He does not allege any special circumstances which prevented him from challenging the voluntariness of his plea in his first petition for post-conviction relief. We also note that there is no right to court-appointed counsel in state collateral proceedings, *Hooks v. Wainwright*, 775 F.2d 1433, 1437–38 (11th Cir.1985); thus, a petitioner's "failure to act or think like a lawyer cannot be cause for failing to assert a claim." *Smith*, 876 F.2d at 1465.

We recognize that even representation by the most competent lawyer is no guarantee that all colorable issues will be raised. *Id.* at 1466. The Supreme Court has stated that defendants represented by competent counsel are held responsible for their lawyer's mistakes that result in a procedural default. *Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645. Where a pro se petitioner is able to raise an issue, "it would be inequitable to give him a 'second bite at the apple' when he initially defaults the issue while we deny a second chance to the petitioner whose counsel fails to raise the issue." *Smith*, 876 F.2d at 1466.

■ Petitioner's counsel appears to concede that Harmon is unable to meet the traditional "cause and prejudice" standard, but argues instead that the failure to consider the claim will result in a "fundamental miscarriage of justice." *See Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). In support of his argument, counsel submits that Florida case law has established the necessity of advising defendants regarding the possible retention of jurisdiction in order to render a plea knowing and intelligent. *See Green v. State*, 421 So.2d 508 (Fla.1983). Had the petitioner raised the involuntariness or infirmity of the plea agreement in his first state court motion, counsel argues that the state court would have been required to

either permit Harmon to withdraw his guilty pleas or strike the provision for retention of jurisdiction over his sentences.

Apparently, petitioner's argument is that a showing of sufficient prejudice should permit relief even in the absence of cause. But the Supreme Court has expressly rejected the contention that cause need not be shown if actual prejudice is shown. *Carrier*, 477 U.S. at 495, 106 S.Ct. 2639; *see also Engle v. Isaac*, 456 U.S. 107, 134 n. 43, 102 S.Ct. 1558, 1575 n. 43, 71 L.Ed.2d 783 (1982). In *Carrier*, the Court clarified the applicable test and rejected "a reworking of the cause and prejudice test ... to dispense with the requirement that the petitioner show cause and instead [ ] focus exclusively on whether there has been a 'manifest injustice' or a denial of 'fundamental fairness.'" The court further stated:

> We remain confident that, for the most part, 'victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard.' ... But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a

federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

477 U.S. at 495, 106 S.Ct. 2639.

The "cause and prejudice" standard is a strong constraint on federal court interference with state convictions when the state prisoner has not complied with legitimate state procedures.[13] *Smith*, 876 F.2d at 1467. Without reaching the issue of prejudice, we conclude that Harmon has failed to meet his burden of demonstrating "good cause" for his noncompliance with state procedures.[14] Furthermore, we find that these facts do not constitute the "extraordinary case" as envisioned by the *Supreme Court* in *Carrier*. Petitioner has made no showing that he is "actually innocent" of the crimes for which he was convicted. Accordingly, we decline to address the merits of petitioner's claim for habeas corpus relief. The order of the district court is AFFIRMED.

**13.** The state's interest in the integrity of its rules and proceedings and the finality of its judgments is undermined if the federal courts were to freely ignore procedural forfeiture in state court. As the court emphasized in *Presnell*, the successive petition rule is instrumental in enhancing finality of a defendant's conviction and the execution of his sentence. 835 F.2d at 1575. By requiring the petitioner to present all his claims in the first collateral proceeding, the rule eliminates piecemeal review of a petitioner's claims and facilitates an earlier retrial in the event that the petition has merit. In addition, the rule improves the quality of collateral review and saves the state's judicial and parajudicial resources. These objectives are achieved, however, "only to the extent that the state courts, and the federal habeas courts, honor them." *Id.*

**14.** Since "a conclusion of lack of cause moots the inquiry regarding prejudice," *Sullivan v. Wainwright*, 695 F.2d 1306, 1311 n. 8 (11th Cir.1983), this court need not consider whether Harmon suffered actual prejudice. We must emphasize, however, that "mere errors of state law are not the concern of [a federal] [c]ourt unless they rise for some other reason to the

level of a denial of rights protected by the United States Constitution." *Dugger v. Adams*, ––– U.S. –––, –––, 109 S.Ct. 1211, 1216, 103 L.Ed.2d 435, 444 (1989). In substance, Harmon alleges that his guilty pleas were involuntary because he was not informed that the trial court could retain jurisdiction over one-third of his sentence, the effect of which would be to give the trial court discretion to veto Herman's early parole. While it appears that under state law, Harmon would be entitled to have this condition stricken from his sentence, if properly raised, *Green v. State*, 406 So.2d 1148 (Fla.Dist.App.Ct.1981), aff'd, *State v. Green*, 421 So.2d 508 (Fla.1982), "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." *Adams*, 109 S.Ct. 1211, 103 L.Ed.2d at 444. *See Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203, 208 (1985) (The Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in federal court.")