**Bernard BOLENDER, Petitioner,**

v.

**Harry K. SINGLETARY, Secretary, Florida Department of Corrections, Respondent.**

No. 95–1484–CIV.

United States District Court, S.D. Florida.

July 17, 1995.

Mark Evan Olive, Ann Faith Jacobs, Volunteer Lawyers' Post–Conviction Defender Organization, Inc., Tallahassee, FL, for petitioner.

Robert A. Butterworth, Attorney General, Tallahassee, FL, Fariba Komeily, Assistant Attorney General, Office of Attorney General, Department of Legal Affairs, Miami, FL, for respondent.

### ORDER DENYING EMERGENCY PETITION FOR WRIT OF HABEAS CORPUS

MORENO, District Judge.

THIS CAUSE came before the Court upon Bernard Bolender's ("Petitioner") Petition for Writ of Habeas Corpus ("the petition"), pursuant to 28 U.S.C. § 2254. Petitioner, who has been sentenced to death, is an inmate in the custody of Respondent. The petition was filed on July 11, 1995, immediately before the Florida Supreme Court's decision on Petitioner's motion for post-con-

viction relief. The execution of Petitioner, previously scheduled for Wednesday, July 12, 1995 at 7:00 a.m., was stayed for five days so that this Court could fully consider the claims raised in the petition. The execution is presently scheduled for Tuesday, July 18, 1995, at 7:00 a.m. The Court scheduled oral argument for July 17, 1995 at 10:00 a.m. and set a briefing schedule. In addition, the Court reviewed all the papers filed with respect to this petition.

Having heard oral argument of counsel on July 17, 1995, the Court finds that the claims raised in this second federal petition are procedurally barred, as well as barred as an abuse of the writ and as a successive petition. Petitioner has failed to establish "cause" for failure to raise claims in his 1990 federal petition and "prejudice" therefrom, as defined in the abuse of the writ decisions. *See, e.g., McCleskey v. Zant,* 499 U.S. 467, 494–495, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991). Moreover, Petitioner has not shown that a "fundamental miscarriage of justice" would result from a failure to entertain his claims. *Id.* As Petitioner has not satisfied his burden of disproving abuse, this Court is precluded from hearing his claims. Accordingly, the petition is DENIED and, as previously ordered in this Court's Order Temporarily Granting Stay, filed on July 11, 1995, the stay will automatically dissolve at 3:00 p.m. on July 17, 1995.

### PROCEDURAL HISTORY

This is Petitioner's second petition requesting federal habeas corpus relief. The original federal habeas corpus petition was filed in the United States District Court for the Southern District of Florida on October 1, 1990. This Court initially stayed the execution for several months but subsequently denied relief without holding an evidentiary hearing. *Bolender v. Dugger,* 757 F.Supp. 1400 (S.D.Fla.1991).[1] The Eleventh Circuit

Court of Appeals affirmed this Court's denial of federal habeas corpus relief in all respects. *Bolender v. Singletary,* 16 F.3d 1547 (11th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 589, 130 L.Ed.2d 502 (1994).

Petitioner is presently under a fourth warrant for execution, signed by the Governor of the State of Florida on May 24, 1995, *with an expiration date of July 18, 1995 at 12:00 p.m.* Petitioner filed his third motion to vacate judgement and sentence pursuant to Florida Rule of Criminal Procedure 3.850, and a hearing was held before State Circuit Judge Bernard Shapiro on Saturday, July 8, 1995. Judge Shapiro denied the petition and the Florida Supreme Court affirmed the denial of the petition on July 11, 1995.[2]

During the stay issued by this Court, Petitioner has filed a fourth post-conviction motion before Judge Shapiro.

### FACTUAL BACKGROUND

The historical facts established by the Florida Supreme Court,[3] based on the trial testimony, indicate that Bolender, along with his co-defendants Joseph Macker and Paul Thompson, ordered the four victims to strip, robbed them of their jewelry, threatened to kill them, tortured them and eventually killed them. The victims had agreed to provide 20 kilograms of cocaine at Macker's residence but possessed only one kilogram upon arrival. After finding only one kilogram of cocaine, Bolender threatened to kill all four victims if they did not reveal the location of the additional 19 kilograms of cocaine.

Macker pled guilty to second degree murder for the four homicides, became a witness for the state, and was sentenced to life in prison. Macker testified at trial that the victims were tortured and terrorized in an attempt to locate the missing cocaine. Specifically, Macker testified that Bolender burned the back of one victim using a hot knife, kicked the victims, repeatedly beat the

---

1. The Court, however, held two days of non-evidentiary hearings to address the matters presented by the original petition.

2. The procedural history throughout the state court system is clearly set forth in the following opinions: *Bolender v. State,* 422 So.2d 833 (Fla. 1982), *cert. denied,* 461 U.S. 939, 103 S.Ct. 2111,

77 L.Ed.2d 315 (1983); *State v. Bolender,* 503 So.2d 1247 (Fla.1987), *cert. denied,* 484 U.S. 873, 108 S.Ct. 209, 98 L.Ed.2d 161 (1987); *Bolender v. State,* 541 So.2d 1172 (Fla.1989); *Bolender v. Dugger,* 564 So.2d 1057 (Fla.1990).

3. *Bolender v. State,* 422 So.2d 833 (Fla.1982).

victims with a baseball bat, shot one victim in the leg and eventually killed all four victims.

Bolender and Thompson, in an attempt to destroy the evidence of their murders, placed the presumably dead victims in one of the victim's car. Bolender and Thompson drove the car and the bodies of the victims to an interstate off-ramp where they parked and poured gasoline on the car and the surrounding grassy area. Bolender and Thompson then set the car afire and fled. Several passing motorists extinguished the fire before the vehicle was consumed. The fourth victim, John Merino, was still alive at this point, but eventually died at the hospital.

On April 25, 1980, Bolender was convicted on four counts of first degree murder, four counts of kidnapping and four counts of armed robbery for torturing and slaying these four alleged drug dealers. The jury unanimously recommended life imprisonment. Circuit Judge Richard Fuller overrode the jury's recommendation and imposed the death penalty on May 7, 1980.

## SECOND FEDERAL HABEAS PETITION

In this second habeas petition, Bolender raises various claims involving the withholding of information that would have undermined the testimony of co-defendant/witness Joseph Macker. Specifically, Petitioner claims as follows:

CLAIM I—The State withheld the content and result of the polygraph examination which Macker was required by the State to take and pass before he could testify against Petitioner and receive a life sentence.

CLAIM II—Evidence in State police files indicates Macker's past as an alleged liar, briber, violent extortionist and corrupter of public officials which was not disclosed to trial counsel at the time of trial.

CLAIM III—The State withheld information that police agencies possessed regarding witness Diane Macker's knowledge of other homicides, drug dealings, her own drug addiction and manipulation by her husband, Joseph Macker.[4]

CLAIM IV—Evidence shows that Macker's plea agreement required that he procure witnesses for the State in violation of due process of law.

CLAIM V—Evidence reveals that Macker confessed to the killings.

CLAIM VI—Evidence reveals that Macker was an informant for the government.

CLAIM VII—Ineffective assistance of counsel by trial counsel, who was three years out of law school and, according to his former girlfriend, addicted to cocaine and a seller of drugs.

CLAIM VIII—Obstruction by the Dade County State Attorney in preventing Petitioner's counsel access to co-defendants Macker and Thompson in July of 1995.

CLAIM IX—Predisposition by sentencing judge to impose the death penalty as evidenced by his override of the jury's unanimous recommendation for life in prison.

The State, in its response filed on July 13, 1995, argues that all claims are procedurally barred as an abuse of the writ. The State's position is that the so-called newly discovered evidence was available to Petitioner before his last federal petition and that Petitioner has not shown cause for his failure to raise these claims earlier. The State further argues that this "evidence" would have been inadmissible at trial, and even if admitted, does not show that it is more likely than not that a reasonable juror would not have convicted Petitioner in light of this undisclosed evidence.

## LEGAL ANALYSIS

■ The Court concludes that it cannot reach the merits of these claims as they are not properly before it. Petitioner has not overcome the several procedural bars that stand in the way of this Court's substantive review. The merits of a habeas claim may not be reached until the abuse of the writ issue has been decided. *Jones v. White,* 992 F.2d 1548, 1558, 1565 (11th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 448, 126 L.Ed.2d 381; *Macklin v. Singletary,* 24 F.3d 1307 (11th Cir.1994), *cert. denied,* —— U.S.

---

4. Diane Macker is now deceased.

——, 115 S.Ct. 1122, 130 L.Ed.2d 1085 (1995).

■ Abuse of the writ doctrine rejects habeas claims where the petitioner deliberately withheld a viable claim in earlier proceedings. The doctrine is principally intended to promote the finality of criminal proceedings by requiring petitioners to include all of their claims in a single habeas petition in the federal district court.

■ Somewhat similar to the abuse of writ doctrine is the successive petitions doctrine. Successive petitions raise the same or substantially similar grounds for relief as presented in a previous petition. *Sanders v. United States,* 373 U.S. 1, 10, 83 S.Ct. 1068, 1074, 10 L.Ed.2d 148 (1963). Courts often consider successive petitions to be an abuse of the writ; thus, the two doctrines overlap.

The State argues that Bolender's present petition should be dismissed as an impermissible successive writ and abusive writ and that the claims contained therein are procedurally barred from federal review. Rule 9(b) of the Rules Governing Section 2254 Cases in the United States District Courts provides:

> A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9(b), 28 U.S.C. foll. § 2254.

■ Based upon the doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), and its progeny, where the state court has applied a state procedural bar, the claim is likewise barred from federal habeas corpus consideration, absent a showing of cause for and actual prejudice resulting from the default. A state procedural default bars consideration of an issue on federal habeas review when (1) the last

state court rendering judgment on the issue in question "clearly and expressly" states that its judgment rests on a procedural bar;[5] or (2) there is clear and unambiguous application of a bar by the trial court.[6] The Florida Supreme Court's recent pronouncement in this case clearly and expressly states that its judgment rests on a procedural bar. (Florida Supreme Court Order of July 11, 1995 at 8–9).

■ Because the Florida Supreme Court's judgment is based upon a procedural bar, Petitioner's claims are barred from federal review unless the procedural violation does not provide an "adequate and independent" ground for denial of the claim. *See Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Upshaw v. Singletary,* 54 F.3d 718, 720 (11th Cir. 1995). In order to be "adequate," the rule must not have been applied by the state court in an inconsistent or manifestly unfair manner. *Upshaw,* 54 F.3d at 720.

The Court finds that the Florida Supreme Court's ruling was based upon an adequate state ground. However,

> [i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565. *See also Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Harmon v. Barton,* 894 F.2d 1268 (11th Cir.1990), *cert. denied,* 498 U.S. 832, 111 S.Ct. 96, 112 L.Ed.2d 68 (1990). As discussed above, Petitioner has failed to demonstrate "cause" and "prejudice" to overcome the procedural bar. *McCleskey,* 499 U.S. at 494–495, 111 S.Ct. at 1470. It is clear that Petitioner was aware of

---

5. *See Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989).

6. *See Harmon v. Barton,* 894 F.2d 1268 (11th Cir.), *cert. denied,* 498 U.S. 832, 111 S.Ct. 96, 112 L.Ed.2d 68 (1990); *Whiddon v. Dugger,* 894 F.2d 1266 (11th Cir.1990).

the factual and legal basis for the claims currently asserted when he filed his first federal habeas petition in 1990. Petitioner did not act with reasonable care and due diligence in raising all of the claims he is now raising 15 years after conviction, and 5 years after his first federal petition. As the petition is devoid of the requisite showing, this Court cannot reach the merits of Petitioner's claims under the abuse of writ doctrine.

■ Having determined that Petitioner has not satisfied the cause and prejudice requirements, the Court must next decide whether the "actual innocence exception" applies in this case so as to permit the Court to address Petitioner's procedurally defaulted claims. Petitioner presents a claim of actual innocence based upon the lack of credibility of co-defendant Macker and recent affidavits submitted by third parties alleging that Macker confessed to the murders. The Supreme Court has announced that, in order for a court to reach the merits of a petitioner's successive, abusive or defaulted federal habeas claim of actual innocence, he must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995) (quoting *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986)) (holding that *Carrier* standard is applicable for applying "miscarriage of justice exception" to petitioner claiming actual innocence of the crime). Petitioner is not required to bear the burden of showing by clear and convincing evidence that the jury would not have convicted him absent the constitutional errors claimed. *Schlup,* —— U.S. at ——, 115 S.Ct. at 867. However, Petitioner must still show that it is more likely than not that a reasonable jury would not have convicted

him in light of undisclosed evidence suggesting his innocence. *Id.* The Supreme Court has also noted that a substantial claim that constitutional error has resulted in the conviction of a truly innocent person is "extremely rare." *Id.* at ——, 115 S.Ct. at 864.

> To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.* at ——, 115 S.Ct. at 865.

> "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at ——, 115 S.Ct. at 868.

Thus, Petitioner does not meet the threshold requirement unless he persuades the Court that, in light of the new evidence, no juror acting reasonably would have found him guilty beyond a reasonable doubt.

■ The showing made by Petitioner in this case falls far short of any such threshold. In support of his actual innocence claim, Petitioner reiterates conclusory language that he is innocent of the murders or, in the alternative, he is being penalized more severely than the other culprits, Macker and Thompson. In addition, Petitioner offers affidavits containing double hearsay allegations.[7] Further, the offered affidavits are not the "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence" that the Supreme Court found reliable in *Schlup.* The Court finds that Petitioner has offered no satisfactory

---

**7.** Terri and Deborah Novello submitted affidavits recounting what their now deceased father, Anthony Novello, allegedly said about Joseph Macker's lurid past, including the murders. The affidavits state that Bolender had nothing to do with the murders. Thomas Holt, an incarcerated individual who shared a cell with Macker, submitted an affidavit indicating that Macker stated that he was out of his mind on Quaaludes at the time of the murders. John Smetana, who was incarcerated with Macker in 1986, submitted an affidavit alleging that he overheard Macker confess

to a legal clerk at the correctional institution that he had lied to save himself. John Sellers, who was incarcerated with Macker in 1983, submitted an affidavit stating that Macker lied at trial because he was afraid of the person who actually perpetrated the murders. Clarence Muscynski, another one of Macker's cell mates, submitted an affidavit filed in the fourth state post-conviction motion and considered by this Court, which recounts Macker's involvement in the murders and states that Macker lied about Bolender's involvement at the time of trial.

explanation as to why the affiants waited until the 11th hour to make their statements. The alleged new evidence as found in the affidavits is not evidence admissible at trial that would have changed the outcome of Petitioner's conviction, or have any effect, let alone a substantial effect, on the determination of the verdict. In fact, the State Circuit Judge, in denying the third post-conviction challenge, found that such evidence was not material. Thus, even if the procedural bars enunciated by the Florida Supreme Court in this case would not preclude this Court's review of the merits, the Court finds that the allegations of new evidence would not have affected the outcome of the conviction.

The instant petition is not based upon the extraordinary situation where a constitutional claim violation has resulted in confinement and imminent execution of a truly innocent person. Both Bolender and Macker testified at trial. Bolender claims in his petition that "Macker was the prime mover, torturer and killer." (Pet. at 3). Macker and his wife, who is now deceased, testified that Bolender was the ringleader and perpetrator. The jury, hearing the evidence and weighing the credibility of the witnesses, rejected Bolender's alibi claims and convicted him on all counts.[8] Even assuming that Petitioner's "new evidence" may indicate that Macker's past and his participation in the crimes were more deserving than the sentence he eventually received, this does not support Petitioner's claim that he was in fact innocent of the crimes. This is not a truly persuasive demonstration of actual innocence, and as such, does not meet the test set forth in *Herrera v. Collins,* — U.S. —, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In *Herrera,* the Supreme Court stated that

> in a capital case a truly persuasive demonstration of actual innocence made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim. But because of the very disruptive effect that entertaining claims of actual innocence would have on the need for finality in capital cases,

and the enormous burden that having to retry cases based on often stale evidence would place on the States, the threshold showing for such an assumed right would necessarily be extraordinarily high.

*Id.* at —, 113 S.Ct. at 869.

The Court finds that the affidavits submitted by Petitioner are not the reliable testimony that was contemplated by the Supreme Court in *Schlup.* This is particularly true where the affidavits contain solely hearsay statements. Conversely, in *Schlup,* the affidavits involved statements from eyewitnesses to the crime at a detention facility. Because of the incarceration status of the witnesses, the District Court in *Schlup* rejected these affidavits without conducting an evidentiary hearing. *Schlup* is also substantially distinguishable in that Schlup provided a videotape from a camera in the prisoner's dining room demonstrating that he could not have participated in the assault. Furthermore, the "State produced no physical evidence connecting Schlup to the killing." *Schlup,* — U.S. at —, 115 S.Ct. at 855. In Bolender's case, the State submitted the most reliable type of evidence: fingerprints.

Thus, the Court finds that Petitioner has failed to establish the requisite probability that a constitutional violation has probably resulted in the conviction of one who is actually innocent.

In view of the foregoing discussion, it is

ADJUDGED that the Petition for Writ of Habeas Corpus is DENIED, the request for evidentiary hearing is DENIED and the motion for a certificate of probable cause is similarly DENIED. It is also

ADJUDGED that the stay imposed by this Court shall be dissolved, as previously indicated, at 3:00 p.m., this 17th day of July, 1995.

DONE and ORDERED.

---

8. Bolender denied being present at the scene despite his fingerprints being found on the trunk of the burning car that contained the victims.