Richard Anthony TUCKER,
# 4872, Petitioner,

v.

Michael MOORE, Commissioner, South Carolina Department of Corrections, and Charles Condon, Attorney General of the State of South Carolina, Respondents.

No. Civ.A. 0:98–681–8BD.

United States District Court,
D. South Carolina,
Columbia Division.

March 15, 1999.

612

Teresa Lynn Norris, Columbia, SC, Thomas Ross Haggard, Columbia, SC, for Petitioner.

Donald John Zelenka, Columbia, SC, for Respondents.

### ORDER

BLATT, Senior District Judge.

### INTRODUCTION

The Petitioner in this 28 U.S.C. § 2254 action was sentenced to death by a South Carolina Court of General Sessions on October 28, 1993. In this § 2254 petition, the Petitioner's two attorneys assert several grounds relating to the sentencing phase of his criminal trial and his direct appeal; they do not dispute the proceedings during the guilt phase of his trial. The record includes the Report and Recommendation of United States Magistrate Judge Bristow Marchant, in which report the magistrate judge recommends that the Petition for Writ of Habeas Corpus be denied, and the Petition dismissed. Both parties timely filed objections with this Court.

■ The Report and Recommendation of the United States Magistrate Judge was made in accordance with 28 U.S.C. § 636 and the local rules of this district concerning reference to a magistrate judge. *See United States Magistrates,* Local Rule 73.02, D.S.C.; *Bowman v. Bordenkircher,* 522 F.2d 209 (4th Cir.1975). Under 28 U.S.C. § 636(b),

[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Absent timely objection from a dissatisfied party, a district court is not required to review, under a *de novo* or any other standard, a magistrate judge's factual or legal conclusions. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985). Here, objections to the magistrate judge's report were filed and the Court has conducted a *de novo* review of those portions of the magistrate judge's report to which objections were made. In conducting its *de novo* review, the Court has reviewed relevant portions of the state court transcripts and exhibits contained in the record, and the applicable law.

### DISCUSSION

I. *Whether the Petitioner's § 2254 Petition is time-barred by 28 U.S.C. § 2263.*[1]

■ As the magistrate judge explained, for a state to "opt in" to the special habeas corpus procedures in capital cases that became effective April 24, 1996, (Chapter 154 of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §§ 2261–2266), a state would have to satisfy 28 U.S.C. § 2261(b) and (c). The Respondents argue that South Carolina did so by (1) enacting S.C.Code Ann. § 17–27–160, which established a mechanism requiring the appointment of two counsel in death penalty cases, standards for qualification of counsel to be appointed, and compensation and litigation expenses for hearing and appellate counsel in these cases; and (2) *In re Stays of Execution In Capital Cases,* 321 S.C. 544, 471 S.E.2d 140

---

**1.** At the hearing before the magistrate judge, the Petitioner conceded that the petition was not timely filed under 28 U.S.C. § 2263.

(S.C.1996), established requirements for the timely appointment of capital state post-conviction relief counsel. The Petitioner denies that the State has complied with 28 U.S.C. § 2261(b) and (c).

The magistrate judge determined that it is not necessary for this Court to decide whether South Carolina's attempt to satisfy 28 U.S.C. § 2261(b) and (c), actually does satisfy those provisions, because, *in this case*, the two counsel appointed to represent the Petitioner during the state post-conviction relief (PCR) proceedings did *not* satisfy the standards set forth in S.C.Code Ann. § 17–27–160 (South Carolina's attempt to opt-in). The magistrate judge notes that during a hearing held before him[2] the Respondents conceded that they had no evidence to contradict the affidavits of Mr. Johnston and Mr. Poole, the state PCR counsel, which provide factual information that they did not meet the requirements of 17–27–160(B). The Respondents argue, in their Objections, that because the State had implemented a procedure that does comply with 28 U.S.C. § 2261(b) and (c), and had implemented that procedure prior to the two counsel being appointed to represent the Petitioner in the state PCR proceedings, and prior to the Petitioner filing his first PCR application, then 28 U.S.C. § 2261 et seq. does apply to Petitioner's action.

The magistrate judge rejected the Respondents' argument, and this Court agrees with the sound reasoning of the magistrate judge. If the Respondents did not follow their own procedures set forth in S.C.Code Ann. § 17–27–160(B) when appointing counsel for the Petitioner during the state PCR proceedings, then the Respondents cannot invoke Chapter 154 of the AEDPA (28 U.S.C. §§ 2261–2266) against the Petitioner in this federal habe-

as action, even assuming S.C.Code Ann. § 17–27–160 does satisfy 28 U.S.C. § 2261(b) and (c). *See Bennett v. Angelone*, 92 F.3d 1336, 1342 (4th Cir.1996). This Court is expressly not passing on the issue of whether S.C.Code Ann. § 17–27–160 meets the requirements of 28 U.S.C. § 2261(b) and (c), because it is not necessary to reach that issue. This Court adopts the magistrate judge's conclusion that Chapter 154 of the AEDPA does not apply to the Petitioner's case, as set forth in pages 10–13 of the Report and Recommendation, because Petitioner's appointed state PCR counsel did not meet the experience requirements of § 17–27–160.

Having decided that Chapter 154 of the AEDPA does *not* apply to this case, it is undisputed that the Antiterrorism and Effective Death Penalty Act of 1996 amendments to 28 U.S.C. § 2254, effective April 24, 1996, do apply to this case which was filed September 9, 1998.[3] *See Green v. French*, 143 F.3d 865, 868 (4th Cir.1998), *cert. denied* —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999).

II. *Whether Petitioner's claims A(1) and A(2) are procedurally barred, and whether cause and prejudice exists to excuse the procedural default.*

The magistrate judge found that Petitioner's claims A(1) and A(2) are procedurally defaulted because, although they were listed as grounds for relief in the state PCR trial court petition, which petition was denied, those claims were not raised in the direct appeal PCR proceedings to the South Carolina Supreme Court. In the Petitioner's objections, he implicitly acknowledges that both of these claims are procedurally defaulted. As the magistrate judge correctly explained, because those

---

**2.** The Petitioner was present with his counsel.

**3.** For example, the magistrate judge analyzed the Petitioner's claims under 28 U.S.C. § 2254(e)(1). *See* pages 26–28 of the Report and Recommendation. The Petitioner did not object to the AEDPA 1996 amendments to 28 U.S.C. § 2254 being applied to his claims.

Further, in the Petitioner's Objections, he argues that "he has demonstrated by clear and convincing evidence that the state court findings of fact are unreasonable," which is the standard set forth in 28 U.S.C. § 2254(d) and (e).

claims were not raised in the direct appeal PCR proceedings to the South Carolina Supreme Court, a federal habeas court is precluded from reviewing those claims unless cause and actual prejudice, or actual innocence, is shown by the Petitioner. *Coleman v. Thompson,* 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Petitioner alleges that cause and actual prejudice exists.

■ The magistrate judge found that no cause exists to excuse the procedural default. While constitutionally ineffective assistance of counsel can constitute cause, it can only be cause if it is an independent constitutional violation. *Id.* at 2567.[4] The magistrate judge found that the Petitioner cannot prove cause because the counsel who were allegedly ineffective for failing to raise those claims before the South Carolina Supreme Court are the same "counsel in his postconviction proceeding," and "[i]neffective assistance of PCR counsel does not amount to an independent constitutional violation...." *See* Report and Recommendation, p. 15.

■ The Petitioner attempts to prove an independent constitutional violation by alleging that his federal due process rights were violated because South Carolina did not appoint PCR counsel whose qualifications satisfied S.C.Code Ann. § 17–27–160, and that this was an arbitrary denial of a statutory right which amounts to a denial of due process. What concerns this Court about Petitioner's argument is that South Carolina enacted § 17–27–160 for the purpose of opting-in to Chapter 154 of the AEDPA, but because it did not follow the statute in this case it is being held account-able by this Court's refusal to apply Chapter 154 to this case. The Court believes that its refusal to apply Chapter 154 to the Petitioner's case, which ruling Petitioner seeks, due to the State's failure to follow § 17–27–160, is of great benefit to the Petitioner, and for the Petitioner to now claim a violation of a constitutional right based upon the State's failure to follow § 17–27–160, contradicts that ruling. This Court finds that the State's failure to follow § 17–27–160 is not a violation of Petitioner's constitutional rights because the rights granted to the Petitioner under that statute, if not given, do not penalize the Petitioner. The result of the State's failing to follow § 17–27–160 in a particular case is that Chapter 154 does not apply to that case. Moreover, the claim that ineffective assistance of counsel in this case amounts to cause is troubling because Andrew J. Johnston was an attorney for Petitioner during the state PCR trial court proceedings, and during the PCR appeal (where claims A(1) and A(2) were not raised), and during this action where he essentially attacks his own actions as ineffective.[5]

Based on the foregoing, this Court finds that an independent constitutional violation did not occur when the State failed to follow § 17–27–160, and, therefore, no cause exists to excuse the procedural defaults of claims A(1) and A(2). However, even if cause did exist, this Court agrees with the magistrate judge that the Petitioner has neither shown actual prejudice as a result of the alleged violations of federal law, nor a fundamental miscarriage of justice.

4. This Court notes that in *Coleman,* the Supreme Court determined that there is no constitutional right to counsel on appeal from a state habeas trial court judgment; thus, "... any attorney error that led to default of Coleman's claims in state court cannot constitute cause to excuse the default in federal habeas." *Id.* at 2568. Similar to the case before this Court, in *Coleman,* the claims had been presented to the state habeas trial court and the effectiveness of counsel before that court was not challenged.

5. In the PCR trial court proceedings, the Petitioner's attorneys were Andrew J. Johnston and J. Roger Poole; during the PCR appeal to the South Carolina Supreme Court, the Petitioner's attorneys were Andrew J. Johnston and J. Roger Poole; and, in this action, Andrew J. Johnston is one of Petitioner's attorneys.

■ With regard to ground A(1), the Petitioner essentially alleges that the possibility of parole was impermissibly suggested to the jury during the sentencing phase of the trial during the cross-examination of Dr. Evans, and that Petitioner's counsel was constitutionally ineffective for failing to object. This Court has reviewed the entire sentencing phase of the trial, including the judge's instructions before and during the jury deliberations, and the juror's notes to the Court. The magistrate judge explained that, if Petitioner's counsel had objected during the cross-examination of Dr. Evans, the trial court judge would have given a cautionary instruction; the magistrate judge found that at the time the jury asked the question about parole, the judge gave an appropriate instruction that "life imprisonment is to be understood in its plain and ordinary meaning and that the possibility of parole is not to be considered by you." *See State v. Norris*, 285 S.C. 86, 328 S.E.2d 339, 344 (S.C.1985), *overruled on other grounds by, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (S.C. 1991). Therefore, the magistrate judge concluded, and this Court agrees, that because the jury was properly instructed not to consider the possibility of parole, no actual prejudice exists regarding this alleged error.

The Petitioner's objection to the Report and Recommendation is that the jury had deliberated for a portion of its deliberations with the belief that Petitioner would be eligible for parole, and that the trial court's "subsequent instruction to disregard parole was like trying to unring a bell." [6] It appears to this Court that the jury may have deliberated from between 1:33 p.m. until 5:02 p.m. on October 27, 1993, wondering whether the Petitioner would be eligible for parole. Around 5:02 p.m., the Court gave its instruction to the jury to disregard the possibility of parole. Thereafter, the jury deliberated until 8:03

p.m. that day, with a break from 5:55 p.m. to 6:53 p.m. to hear testimony. The jury further deliberated on October 28, 1993, from 9:00 a.m. to 12:27 p.m., except during the break from 10:44 a.m. to 10:47 a.m. when the judge gave an *"Allen"* charge. Therefore, it appears to this Court that the jury had substantial deliberation time after the cautionary instruction about parole was given, and this Court, absent an extraordinary situation not present in this case, feels that it should adhere to a crucial assumption underlying our constitutional jury system; namely, that jurors carefully follow instructions. *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 1976 n. 9, 85 L.Ed.2d 344 (1985); *United States v. Love*, 134 F.3d 595, 603 (4th Cir.1998) ("We generally presume that a jury will follow cautionary instructions regarding potentially prejudicial evidence."), *cert. denied,* —— U.S. ——, 118 S.Ct. 2332, 141 L.Ed.2d 705 (1998).

■ With regard to ground A(2), the Petitioner alleges that his counsel was constitutionally ineffective for failing to retain an expert to testify in the sentencing phase of the trial about the effects of crack cocaine upon the Petitioner, and how the drug would have affected the Petitioner's behavior at the time of the incident. The Petitioner argues that his cocaine use was a mitigating circumstance, but that his attorneys did not present to the jury appropriate expert testimony concerning drugs, nor did they introduce the Petitioner's records regarding his drug treatments. The Petitioner submitted an affidavit of Dr. Morton in this case, upon which he relies to explain how the use of crack cocaine affected the Petitioner's behavior on the night in question. The Petitioner argues that this type of evidence had the potential to sway the jury to render a life sentence.

The magistrate judge thoroughly explained that the Petitioner's counsel's strategy during the sentencing phase was

---

**6.** The Petitioner does not challenge the substance of the instruction concerning parole that the trial court gave to the jury.

to blend the Petitioner's drug abuse and tragic family history, and that counsel did present evidence to the jury of both those aspects of Petitioner's life, which included two experts—a psychotherapist, Ms. Vogelsang, and psychologist, Dr. Evans. *See* Report and Recommendation, pp. 629–31. The magistrate judge found that the Petitioner's counsel's strategical decision as to how to present the jury with evidence of Petitioner's drug abuse was within the wide range of reasonable professional assistance. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

This Court notes that one of the nonstatutory mitigating circumstances that the jury was told it could consider was "the affect of crack cocaine and alcohol on the defendant at the time of the offenses, and any addition[sic] to drugs or other substances." The jury was also advised of four other nonstatutory mitigating circumstances and four statutory mitigating circumstances. *See* Transcript in Record, pp. 2443–2445. This Court has reviewed the affidavit of Dr. Morton, and the case presented by Petitioner's counsel during the sentencing phase of the trial, and it agrees with the magistrate judge that the Petitioner's counsel made a reasonable strategical decision as to how to present evidence in the Petitioner's favor and that no fundamental miscarriage of justice occurred by their failure to present testimony such as set forth in Dr. Morton's affidavit. Based on this conclusion, the *Strickland* prong that counsel's performance fell below an objective standard of reasonableness is not satisfied. Moreover, this Court agrees with the magistrate judge that even if Petitioner's counsel's performance was deficient for failure to produce evidence similar to Dr. Morton's, that there is no reasonable probability that a life sentence would have resulted had such evidence been presented.

Although this Court did consider Dr. Morton's affidavit, as previously set forth, he signed his affidavit on September 9, 1998, the day it was filed in this action. The Petitioner's November 2, 1998, brief states that "Dr. William Alexander Morton was retained by current counsel for petitioner to review and evaluate petitioner's drug history." Based on this, this Court concludes that Dr. Morton's affidavit was not presented to the South Carolina trial PCR court, even though this ground for relief was raised to that court; no explanation is given as to why this affidavit was not presented to the state PCR trial court. Based on a recent Fourth Circuit Court of Appeals unpublished opinion, *Swann v. Taylor,* 173 F.3d 425, 1999 WL 92435, *7 (4th Cir.1999), where an affidavit was presented for the first time in the federal habeas action and the Court declined to consider it, it appears that this Court should *not* consider Dr. Morton's affidavit in the interests of finality, comity, judicial economy, and a resolution of issues in the most appropriate forum. Whether Dr. Morton's affidavit is, or is not, considered, and it should not be, this Court would still deny the Petitioner's claim A(2).

In summary, this Court agrees with the magistrate judge that, as to claims A(1) and A(2), the Petitioner has not shown cause or prejudice to excuse his procedural default. Furthermore, the Petitioner has not attempted to show actual innocence; therefore, the Petitioner's claims A(1) and A(2) are procedurally barred and are dismissed.

III. *Petitioner's claim A(3): whether his trial counsel was ineffective for failing to object to an "Allen" charge during the jury deliberations on the basis of S.C.Code Ann. § 14–7–1330.*

█ The Petitioner argues that when the trial court judge decided to give the jury an *"Allen"* charge during their deliberations, his counsel should have objected based on S.C.Code Ann. § 14–7–1330, which statute prohibits a judge from returning a jury for further deliberations, without its own consent, where it has twice returned without having reached a verdict.

The Petitioner claims that his counsel's failure to raise this statutory argument constituted ineffective assistance.

The magistrate judge agreed with the state PCR trial court's conclusion that this alleged failure by trial counsel was not ineffective assistance. While this Court acknowledges that it must conduct an independent review of the issue of ineffective assistance of counsel, it has done so, and it agrees with Judge Ervin, the state PCR trial judge, and Magistrate Judge Marchant, and it adopts the magistrate judge's analysis of this issue, contained in pages 631–35 of the Report and Recommendation, as the Order of this Court.

The Petitioner's objection to the Report and Recommendation on this *"Allen"* charge issue is that the record indicates that the jury came back several times after "due and thorough" deliberation and were deadlocked. However, this Court, from a review of the same facts, simply disagrees with the Petitioner's conclusion, and it concludes that "due and thorough" deliberation had *first* been accorded by the jury at the time it sent in a note around 10:44 a.m. on October 28, 1993, immediately prior to the trial judge giving the *"Allen"* charge; this Court, therefore, denies the Petitioner's claim A(3).

Based on this Court's rulings as to grounds A(1), A(2), and A(3), the Petitioner's claim A(4), which incorporates the others, is without merit and is denied.

IV. *Petitioner's claim B(1): whether his appellate counsel was ineffective for failing to raise an issue on direct appeal that was preserved by trial counsel regarding the* "Allen" *charge given to the jury during its deliberations.*

■ Here, the Petitioner claims that his appellate counsel rendered ineffective assistance because he failed to raise a meritorious issue on direct appeal that was objected to, and therefore preserved, by trial counsel—that the *"Allen"* charge given to the jury during its deliberations was

*per se* error, and that the judge should have instructed the jury that if a unanimous decision could not be reached, the Petitioner would be sentenced to life imprisonment. Instead, Petitioner contends that his appellate counsel raised a different issue on appeal; namely, that the *"Allen"* charge, under the circumstances, was unduly coercive of a single juror holding out for a life sentence. The South Carolina Supreme Court held that this objection to the *"Allen"* charge was not made at trial, and, therefore, it was not preserved for appellate review. *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (S.C.1995).

The magistrate judge found that Petitioner's appellate counsel's decision not to raise the trial objection to the *"Allen"* charge was a reasonable strategical decision; that the state PCR trial court had considered this claim of ineffective assistance of appellate counsel and rejected it; and that the state PCR trial court's decision was not unreasonable, was supported by the evidence, and satisfied the standards of *Green v. French,* 143 F.3d 865 (4th Cir.1998), *cert. denied* —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (1999), and *Fitzgerald v. Greene,* 150 F.3d 357 (4th Cir.1998), *cert. denied* —— U.S. ——, 119 S.Ct. 389, 142 L.Ed.2d 321 (1998). The Petitioner's objection is that in a death penalty case, the failure to raise a meritorious issue on appeal, which was preserved at trial, violates the Sixth Amendment, and the Petitioner asserts that his appellate counsel's failure to raise the preserved objection on appeal did prejudice him.

This Court has reviewed the state PCR trial court's decision as to this same claim. *See* pp. 2781–2800 in the record. The state PCR trial judge found that appellate counsel's rejection of the preserved trial issue relating to the *"Allen"* charge was reasonable because the charge given was within the acceptable limits approved by *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988) (An *"Allen"* type charge, if not coercive, is

acceptable during the sentencing phase in a capital case.), and was reasonable in light of *State v. Yates*, 280 S.C. 29, 310 S.E.2d 805, 811 (S.C.1982) (The legal effect of a deadlocked jury during the sentencing phase of a capital case, namely, that the judge must give a life sentence, need not be divulged to the jury.), *overruled on other grounds by, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (S.C.1991). In fact, the state PCR judge found that appellate counsel employed an aggressive strategy to blend a persuasive issue with one that was raised at trial but had no chance of success. This Court has conducted an independent review of the trial judge's instructions to the jury during the sentencing phase and jury deliberations, and the applicable law, and it agrees with Judge Ervin's state PCR decision, and the magistrate judge's analysis of this issue, set forth in pages 635–36 of the Report and Recommendation. Accordingly, this Court finds that the state PCR trial court's decision was not unreasonable, that the appellate counsel's failure to raise on appeal the trial objection to the *"Allen"* charge was not ineffective, and that the Petitioner suffered no prejudice by his appellate counsel's performance; therefore, Petitioner's claim B(1) is denied.

Similarly, the Petitioner's claim B(2), that, in general, his appellate counsel's performance was unreasonable, and prejudiced Petitioner, is denied. In the Petitioner's objections here, he apparently abandoned this claim because he has not identified any alleged deficiency by his appellate counsel except the failure to raise, as a ground for appeal, the trial court objection to the *"Allen"* charge.

## CONCLUSION

This Court adopts and incorporates, as a part of this Order, the magistrate judge's entire Report and Recommendation, and it is

ORDERED that the Petitioner's 28 U.S.C. § 2254 petition is hereby dismissed on the merits, and this action is ended.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

MARCHANT, United States Magistrate Judge.

### (Death Penalty Case)

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Petitioner is currently confined under a sentence of death in the Special Management Unit of the Lieber Correctional Institution, which is part of the South Carolina Department of Corrections. The Petition was filed on September 9, 1998.

### Procedural History

The Petitioner was indicted in the November 1992 term of the Spartanburg County Court of General Sessions for the murder of Carrie Lark Alley. Petitioner was also indicted for first degree burglary, kidnapping, grand larceny, and criminal sexual conduct in the first degree. The Solicitor served timely notice of intent to seek the death penalty. Petitioner was represented at trial by three (3) attorneys, Michael Bartosh, Esquire, Billy Hahs, Esquire, and Thomas Boggs, Esquire. On October 25, 1993 the Petitioner was convicted by a jury of murder, first-degree criminal sexual conduct, kidnapping, burglary and larceny. (R. pp. 2112–2114). At the conclusion of the sentencing phase of the bifurcated death penalty trial, the jury returned a recommendation of death, following which the Honorable J. Derham Cole, South Carolina Circuit Judge, sentenced the Petitioner to death. (R. pp. 2465, 2471). Petitioner was also sentenced to thirty (30) years, consecutive, for criminal sexual conduct in the first degree; life, consecutive, for burglary, and ten (10) years, consecutive, for grand larceny. (R. p. 2472). Pursuant to S.C.Code Ann. § 16-3-910, no sentence was handed down for the kidnapping conviction. (R. pp. 2473).

Petitioner filed a timely Notice of Intent to Appeal to the South Carolina Supreme

Court, and an appeal was perfected by Joseph L. Savitz, III, Esquire, of the South Carolina Office of Appellate Defense. Petitioner raised the following grounds in his direct appeal:

1. The judge should have instructed the jury, when asked, that appellant would not be eligible for parole for thirty years if sentenced to life imprisonment.

2. The judge's *Allen* charge[1], under the circumstances of this case, was unduly coercive of the single juror holding out for a life sentence.

3. The judge allowed the state to introduce an excessive and prejudicial amount of evidence concerning the victim's background and character, which the solicitor exploited in his closing argument.

4. Evidence that appellant was wearing a woman's girdle at the time of his arrest was irrelevant and immaterial to any legitimate issue at sentencing.

*Final Brief of Appellant,* p. 1.

On August 21, 1995, the South Carolina Supreme Court entered its opinion affirming the Petitioner's conviction, and on September 18, 1995, the South Carolina Supreme Court denied Petitioner's petition for rehearing. *State v. Tucker,* 319 S.C. 425, 462 S.E.2d 263 (S.C.1995). The United States Supreme Court denied Petitioner's Petition for Writ of Certiorari on January 16, 1996. *Tucker v. South Carolina,* 516 U.S. 1080, 116 S.Ct. 789, 133 L.Ed.2d 739 (1996).

On August 19, 1996, Petitioner filed an Application for Post Conviction Relief ("APCR") in state circuit court. (R. pp. 2476–2481). Petitioner raised the following issues in his APCR:

a. Trial counsel made only a general objection to victim impact evidence in the penalty phase of the trial and not proper; specific objections that this evidence was excessive and unrestricted.

Trial counsel failed to ask the court for reasonable restraints and limitations on victim impact evidence in the sentencing phase of the trial.

Trial counsel failed to object to the *Allen* charge during the penalty phase of the trial on the ground of the failure of the trial court to instruct the jury not reveal their vote.

Trial counsel failed to object to the giving of an *Allen* charge in this case knowing that only one juror prevented the jury from reaching a unanimous decision; thereby making the *Allen* charge unduly coercive.

Trial counsel knew that one juror knew the Petitioner intimately and failed to properly inquire into Petitioner's relationship with the juror during jury voir dire.

b. Trial counsel made other timely, valid arguments against the giving of an *Allen* charge in the penalty phase. Appellate counsel ignored these arguments and made different arguments about the *Allen* charge on direct appeal. This resulted in all arguments being procedurally barred on direct appeal.

c. The reasons given by the State for striking three black jurors was not race neutral in response to Petitioner's trial counsel's *Batson* motions.

One juror knew the Petitioner intimately and failed to reveal this fact during jury voir dire.

d. Petitioner was deprived due process of law by the trial court's giving of an *Allen* charge during the penalty phase of the trial.

(R. p. 2481).

On October 14, 1996, Petitioner filed an amended application for post-conviction relief. (R. pp. 2562–2563). In that Petition, Petitioner raised the following additional grounds:

a. Trial counsel were ineffective by failing to object to, and requesting a mistrial on account of, comments by the

---

1. *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

Assistant Solicitor and a witness being examined by him on Applicant's right to silence during the trial.

b. Trial counsel were ineffective by failing to object to, and requesting a mistrial on account of, the examination of a witness by the assistant solicitor which raised improper issues of Applicant's being paroled.

c. Even after they were noticed for the death penalty but before trial in this case, trial counsel arranged a plea bargain for Applicant which reduced a charge of burglary 1st degree to burglary 2nd degree non-violent. Counsel was ineffective as they did not explain to Applicant that his conviction for a subsequent violence offense (the type in the instant case) would render him parole ineligible and how this could be used as an argument for a life sentence in the penalty phase of this case. The United States Supreme Court has since determined that parole ineligibility is a factor which must be explained to the sentencing jury in the penalty phase of a death penalty case and it would have been a very significant argument to the jury for a life sentence for Applicant.

d. Trial counsel failed to require the state to show a nexus between the victim and the girdle he was wearing at the time of his arrest before its introduction. This failure occurred after they were told of a credible explanation for this highly prejudicial exhibit which had nothing to do with the victim.

e. Trial counsel failed to investigate and raise the statutory mitigating circumstances in the penalty phase that Applicant was under the influence of crack cocaine and was addicted to the substance at the time of the alleged offense, when they knew or should have known a factual basis for such existed. This evidence could have tended to mitigate the alleged crime in and of itself. It also could have favorably impacted the Applicant's criminality of conduct, his ability to conform to the require-

ments of law and whether he was under emotional or mental disturbance at the time of the offense all of which are statutory mitigating circumstances.

(R. pp. 2562–2563).

On February 21, 1997, Petitioner filed a second amended application for post-conviction relief, raising the following additional grounds:

a. Trial counsel was ineffective by failing to move for a mistrial based upon S.C.Code Ann. § 14–7–1330 (1976) when the Court gave the jury an *Allen* charge and ordered the jury to continue deliberating during the penalty phase of Applicant's trial after the jury had twice returned from deliberations to tell the court that it was not able to reach a decision.

b. Applicant's sentence of death was obtained in violation of the laws of South Carolina; to wit, S.C.Code Ann. § 14–7–1330, in that the Court ordered the jury to continue deliberating after it had twice returned from deliberations to tell the Court that it was unable to reach a decision.

(R. pp. 2564–2565).

On March 12, 1997, Petitioner filed a third amended application for post-conviction relief, raising the following issues:

a. Trial counsel were ineffective by advising the Defendant to testify as a witness and thereby subject himself to damaging cross-examination by the solicitor, when he had the statutory right to merely make a jury argument without subjecting himself to cross-examination under S.C.Code Ann. § 16–3–20(B).

b. Trial counsel were ineffective by raising the scope of the Defendant's statutory right to make a closing argument with the court in chambers: receiving the position of the Court on the matter (the Court's position being a limitation of the scope of Defendant's argument which exists neither in statute nor in any case law), then advising the Defendant to testify in light of the "ruling",

all without placing Defendant's position on the record and affording appellate review of the point.

c. Defendant's sentencing proceeding was unlawful and without due process in that the above referenced discussions between trial counsel, the prosecution and the court constituted a hearing or proceeding at a critical stage outside the Defendant's presence in violation of the South Carolina Constitution and the Eighth and Fourteenth Amendments to the United States Constitution.

d. Appellate counsel was ineffective in that counsel failed to argue on appeal an error that trial counsel raised with the trial court concerning the *Allen* charge, i.e., that an *Allen* charge in the penalty phase would be improper unless coupled with a charge that if the jury should not reach a unanimous verdict, that would constitute a final decision of life imprisonment.

(R. pp. 2570–2571).

An evidentiary hearing was held on Petitioner's APCR on March 18, 1997, at which Petitioner was represented by Andrew J. Johnston, Esquire, and J. Roger Poole, Esquire. (R. pp. 2572–2764). The PCR judge subsequently denied the Petition in its entirety. (R. pp. 2766–2845).

The Petitioner filed a Petition for Writ of Certiorari to the South Carolina Supreme Court on September 24, 1997. Petitioner continued to be represented by Mr. Johnston and Mr. Poole. Petitioner raised the following issues in his writ:

a. Did the circuit court err in holding that Petitioner's trial counsel were not ineffective in failing to raise and argue the provisions of S.C.Code § 14–7–1330 (1976)?

b. Did the circuit court err in holding that Petitioner's appellate counsel was not ineffective in failing to raise arguments on appeal perfected by trial counsel and in raising arguments on appeal that were not perfected by trial counsel?

c. Did the trial court err in holding that Petitioner's trial counsel were not ineffective in advising Petitioner to testify in the sentencing phase of trial thereby subjecting Petitioner to damaging cross-examination and in failing to raise the scope of defendant's statutory right to make a closing argument on the record to allow for appellate review?

*See Petition*, p. 2.

On February 9, 1998, the South Carolina Supreme Court entered its order denying the Petition for Writ of Certiorari. *Tucker v. State*, (February 9, 1998).

Petitioner then filed this habeas corpus petition in the United States District Court pursuant to 28 U.S.C. § 2254. Petitioner raises the following issues in his Petition:

### Ground A

*Petitioner was denied the effective assistance of trial counsel in violation of his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments.*

The facts in support of this allegation are as follows:

(1) Dr. Jim Evans testified for petitioner during the penalty phase of his trial. During cross examination, the solicitor used Dr. Evans testimony regarding his psychological evaluations of prison inmates as an opportunity to elicit testimony regarding the classification of those sentenced to life for murder. App. 2365–2367. This inappropriate line of questioning interjected the possibility of parole into the sentencing phase of petitioner's trial. However, counsel failed to object. Prejudice to petitioner is demonstrated by a question from the jury regarding parole eligibility. App. 2455.

(2) Petitioner's trial counsel submitted the following mitigating circumstance: "The effect of crack cocaine and alcohol on the defendant at the time of the offenses and his addition to cocaine and other substances." Supp.App. 74. Yet the only supporting evidence counsel presented came from Petitioner's own

testimony. Counsel admitted at the post-conviction relief hearing that the two main areas of mitigation were petitioner's drug use and family history. PCR 84–85.

A wealth of evidence was available to explain petitioner's addiction to crack cocaine and how his use of this powerful, destructive drug affected his behavior at the time of the incident. Trial counsel had in their possession voluminous records from petitioner's prior admissions into drug treatment facilities, yet failed to present this evidence in support of petitioner's testimony. Furthermore, counsel failed to employ an expert witness who could have evaluated petitioner's drug history. Such an expert was crucial in explaining to the jury how petitioner became addicted to crack cocaine and how it affected his ability to reason. Dr. William Alexander Morton has reviewed petitioner's drug history. Dr. Morton found that petitioner "meets the classic symptoms of 'crack' cocaine use, abuse, and dependence over the seven years he has used cocaine." Morton Aff. 11. Testimony of someone such as Dr. Morton would also have provided counsel with a basis to rebut the solicitor's closing argument that petitioner acted with "a clear, drug free mind . . ." App. 2401.

(3) At the conclusion of the penalty phase of petitioner's trial, the jury began deliberations at 1:33 p.m. App. 2452. The jury returned with a note at 5:03 p.m. indicating they were deadlocked. App. 2955. Per their request, the jury listened again to petitioner's testimony and continued deliberations at 6:53 p.m. App. 2458. The jury again returned with a note at 8:05 p.m. stating: "We are not going to reach a decision tonight. We would like to go back to the motel and resume deliberations in the morning." App. 2459. The next morning the jury returned to deliberate at 9:00 a.m., and continued until 10:44 a.m. App. 2460–2461. At that time, the jury returned with the following note: "We are

hopelessly deadlocked at 11–1 for the death penalty. I do not feel we ever reach a unanimous decision." App. 2957.

When the court indicated its desire to provide the jury with additional instruction, petitioner's counsel requested that the court again inquire of the jury if they were hopelessly deadlocked. Additionally, counsel requested the court to include an instruction that petitioner would receive a life sentence in the event they could not reach a decision. App. 2460. The court ignored counsel's requests and gave the jury an *Allen charge*. Counsel then objected to the charge. 2463. The jury returned at 12:27 p.m. with a verdict of death.

Counsel failed to object to the *Allen* charge pursuant to S.C.Code Ann. § 14–7–1330, which provides:

> When a jury, after due and thorough deliberations upon any cause, returns into court without having agreed upon a verdict, the court may state anew the evidence or any part of it and explain it anew the law applicable to the case and may send it out for further deliberations. But if it returns a second time without having agreed upon a verdict, it shall not be sent out again without its own consent unless it shall ask from the court some further explanation of the law.

Petitioner's jury had returned three times indicating they were having difficulty reaching an unanimous decision, twice stating they were deadlocked. First, they stated they were deadlocked and requested to hear additional evidence. Then they said they were still having difficulty and requested to stop for the evening. After deliberating for several hours the next morning, the jury again stated they were deadlocked. Trial counsel admitted at the post-conviction relief hearing that he was unaware of S.C.Code Ann. § 14–7–1330 at the time of petitioner's trial, and that he

should have objected to the charge based on that provision. PCR 72–75. (4) Counsel's performance on each of these allegations listed in this ground for relief was unreasonable. In addition, counsel's deficiencies, whether taken individually or collectively, prejudiced petitioner. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

### Ground B

*Petitioner was denied the effective assistance of appellate counsel in violation of his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments.*

The facts in support of this allegation are as follows:

(1) Petitioner's appellate counsel failed to raise for review trial counsel's per se objection to the *Allen* charge. Instead he argued that "[t]he judge's *Allen* charge, under the circumstances of this case, was unduly coercive of the single juror holding out for a life sentence." App. 3136. The South Carolina Supreme Court found this argument procedurally barred. *State v. Tucker,* 319 S.C. 425, 427, 462 S.E.2d 263, 264 (1995). Appellate counsel should have raised the meritorious argument preserved by trial counsel, and petitioner was prejudiced as a result.

**2.** This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 19.02(B)(2)(c), D.S.C. The Respondents have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court. *See* Habeas Corpus Rules 5–7.

**3.** Section 2263 provides in relevant part:

(a) Any applications under this chapter [which deals with capital cases] for habeas corpus relief under section 2254 must be filed in the appropriate district court not later than 180 days after final State court affirmance of the conviction and sentence

(2) Appellate counsel's performance was unreasonable and resulted in prejudice to petitioner. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985).

Respondents filed a Return and a Motion for Summary Judgment and a Memorandum in Support of Motion on October 13, 1998. Petitioner filed a memorandum in support of the Petition on November 2, 1998. A hearing was held before the undersigned on November 24, 1998, at which Petitioner was present with counsel. The Petition and Respondents' motion for summary judgment are now before the undersigned for disposition.[2]

### *Discussion*

#### I.

Respondents first contend that the Petition should be dismissed because it is was filed in violation of the 180 day procedures set forth in 28 U.S.C. § 2263.[3] Respondents filed notice of their intention to invoke these procedures in this action in their March 13, 1998 pleading. At the hearing, Petitioner's counsel conceded that the Petition was not timely filed under § 2263. However, Petitioner contends that he is not subject to the one hundred and eighty (180) day deadline of § 2263 because the Respondents failed to comply with the requirements of 28 U.S.C. § 2261.

In order for the special habeas corpus procedures in capital cases [Chapter 154,[4]

on direct review or the expiration of the time for seeking such review.

**4.** Chapter 154 of the Act provides an expedited review process-including a 180 day filing period for federal habeas proceedings in capital cases in States that meet certain conditions. *Calderon v. Ashmus,* 523 U.S. 740, 118 S.Ct. 1694, 1695, 140 L.Ed.2d 970 (1998) [Syllabus]. Proceedings against other States are governed by Chapter 153, which has a 1–year filing period, § 2244(d)(1), and lacks expedited procedures. *Id.* Chapter 153 applies to federal habeas petitions, except federal habeas petitions pending on the date of the Act's enactment. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997).

28 U.S.C. § 2261, *et. seq.*] to apply to a capital petition, the State must first satisfy the provisions of 28 U.S.C. § 2261(b) and (c). These provisions require that the State establish a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in state post-conviction relief cases brought by indigent capital defendants. To satisfy these requirements, effective June 18, 1996, the General Assembly of South Carolina enacted § 17–27–160, which established standards for the appointment of two (2) counsel in death penalty post-conviction relief cases, standards for qualification of counsel to be appointed, and compensation and litigation expenses for hearing and appellate counsel in these cases. Additionally, *In re Stays of Execution In Capital Cases,* 321 S.C. 544, 471 S.E.2d 140 (S.C.1996), established requirements for the timely appointment of capital state post-conviction relief counsel.

The record reflects that the appointment of Petitioner's counsel in the state collateral action occurred subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996. Pub.L. No. 104–132, 110 Stat. 1214 (1996) ["The Reform Act"], which contained new Chapter 154, and subsequent to the enactment of § 17–27–160 [Petitioner's State PCR counsel were appointed on June 21, 1996, five days after the new requirements for counsel became law]. Petitioner's August 19, 1996 Application for PCR also occurred subsequent to these enactments. Therefore, Respondents contend that the requirements and deadlines of 28 U.S.C. § 2261, *et seq.* apply to this litigation, that the Petition is untimely under these statutory deadlines, and that the Petition must be dismissed as having been filed outside of the one hundred and eighty (180) day statute of limitations.

Although the Petitioner does not concede that South Carolina is entitled to the special procedures of Chapter 154 of the Reform Act in any capital cases, Petitioner argues that because of the State's failure to observe and follow its own standards and statutory requirements in this case, it is barred from invoking the special procedures of Chapter 154. Specifically, Petitioner notes that the Statute provides that one of the appointed attorneys must have either previously represented a death sentenced inmate at state post-conviction or federal habeas corpus, or meet the requirements of S.C.Code Ann. § 16–3–26(B) and (F) and have completed at least twelve hours of continuing legal education in capital appellate advocacy. S.C.Code § 17–27–160(B). As previously noted, Andrew J. Johnston and Roger Poole were appointed to represent the Petitioner during his PCR proceedings, and it is uncontested that neither Mr. Johnston nor Mr. Poole met the requirements of the statute.[5] *See Petitioner's Exhibits B and C.* Therefore, Petitioner argues that since the State did not follow its own requirements in appointing him counsel, and he did not therefore receive the benefits of the requirements of Chapter 154, he should not be subjected to the procedural disadvantages of that Chapter, in particular the one hundred and eighty (180) day filing requirement.

Respondents argue that since the procedures as set forth in the applicable statutes were in place prior to the filing of Petitioner's State APCR, South Carolina is entitled to the special procedures in this case even though the specific requirements of § 17–27–160(B) for the appointment of counsel were not followed. The undersigned is unpersuaded by this argument. It is uncontested that the State failed to follow the requirements of its own statute (or of Chapter 154) in the appointment of Petitioner's State PCR counsel. Having itself failed to follow these statutory requirements, the undersigned concludes

---

**5.** Respondents' counsel conceded at the hearing that they had no evidence to contradict PCR counsels' assertions in their affidavits that they do not meet the requirements of § 17–27–160(B).

that the State should not be able to hold the Petitioner to the one hundred and eighty (180) day filing requirement deadline under the particular facts of this case. *Bennett v. Angelone*, 92 F.3d 1336, 1342 (4th Cir.1996), *cert. denied*, 519 U.S. 1002, 117 S.Ct. 503, 136 L.Ed.2d 395 (1996) [Chapter 154 "establishes a quid-pro-quo relationship: A State seeking greater deference to its habeas decisions in capital cases must, by appointing competent counsel to represent indigent petitioners, further assure that its own habeas proceedings are meaningful"]; *Cf. Colvin–El v. Nuth*, No. 97–2520, 1998 WL 386403 at *5 (D.Md. July 6, 1998) ["the inquiry should not be limited to whether capital defendants are ultimately represented by competent counsel. This is undoubtedly required, but Chapter 154 seems to require something more—that there be a system in place to assure that defendants as of right are provided with adequate representation."]; *see* Liebman, J. and Hertz, R., *Federal Habeas Corpus Practice and Procedure*, 2nd Ed., 1996 Cumulative Supplement to Volumes 1 and 2 (1996), at pp. 33–34 ["A State that fails to satisfy all of the statutory prerequisites is categorically prohibited from obtaining the benefits of the opt-in provisions .... only those prisoners who actually had access to the procedural advantages the State is required to provide to capital state postconviction prisoners in order to qualify for opt-in status are subject to the disadvantages that Chapter 154 imposes on habeas corpus petitioners once those prerequisites are met."].

## II.

Respondents contend that issues A(1) and (2) are procedurally barred from consideration by this Court, because Petitioner failed to raise them in his appeal of the

denial of his APCR to the South Carolina Supreme Court. Petitioner has not disputed that although he pursued these claims at his PCR hearing and relief was denied by the PCR judge, that ruling was never presented on appeal to the State Supreme Court. Therefore, Issues A(1) and (2) are barred from further state collateral review. *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 562 n. 3, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Wicker v. State*, 310 S.C. 8, 425 S.E.2d 25 (1992); *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392, 393 (S.C.1991) [post-conviction relief].[6] Further, as there is no current state remedy for Petitioner to pursue these claims, they are fully exhausted. *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Teague v. Lane*, 489 U.S. 288, 297–298, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir.1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], *cert. denied*, 519 U.S. 1103, 117 S.Ct. 854, 136 L.Ed.2d 829 (1997); *Whiteley*, 401 U.S. at 562 at n. 3, 91 S.Ct. 1031; *Wicker*, 425 S.E.2d at 26; *Aice*, 409 S.E.2d at 393. "To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court ... the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state ... or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir.1997) (citations omitted). *See also* S.C.Code

---

**6.** There is no *in favorem vitae* review of postconviction relief proceedings in death penalty cases. *Drayton v. Evatt*, 312 S.C. 4, 430 S.E.2d 517, 520 (S.C.1993), *cert. denied*, 510 U.S. 1014, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993); *Smith v. Moore*, 137 F.3d 808, 821

(4th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 199, 142 L.Ed.2d 163 (1998); *Arnold v. Evatt*, 113 F.3d 1352, 1357–1358 (4th Cir. 1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 715, 139 L.Ed.2d 655 (1998).

Ann. § 17–27–45 (1996) [one-year statute of limitations].

Since Grounds A(1) and (2) were not pursued in the highest state court in Petitioner's PCR action, federal habeas review of these claims is now precluded absent a showing of cause and prejudice, or actual innocence. *Coleman v. Thompson, supra; Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Waye v. Murray,* 884 F.2d 765, 766 (4th Cir.1989), *cert. denied,* 492 U.S. 936, 110 S.Ct. 29, 106 L.Ed.2d 634 (1989). Petitioner argues that consideration of these issues is not barred because Petitioner can show cause and prejudice for his procedural default.

With regard to the "cause" requirement. Petitioner argues that his PCR counsels' ineffectiveness resulted in the procedural default. The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State ... Ineffective assistance of counsel, then, is cause for procedural default." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *see also Coleman v. Thompson, supra; McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Noble v. Barnett,* 24 F.3d 582, 586, n. 4 (4th Cir.1994) ("[C]onstitutionally ineffective assistance of counsel is cause *per se* in the procedural default context"); *Smith v. Dixon,* 14 F.3d 956, 973 (4th Cir.1994) (en banc). However, while ineffective assistance of counsel can constitute "cause" for procedural default, it will only constitute "cause" if it amounts to an independent violation. *Ortiz v. Stewart,* 149 F.3d 923, 932 (9th Cir.1998); *Bonin v. Calderon,* 77 F.3d 1155, 1159 (9th Cir.1996). Here, Petitioner has failed to show the necessary "cause" for his procedural default, because the counsel that failed to pursue these claims in the State Supreme Court are the counsel in his postconviction proceeding. Ineffective assistance of PCR counsel does not amount to an independent constitutional violation, and is not therefore "cause" for the default. *Murray v. Giarratano,* 492 U.S. 1–7, 13, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) [O'Connor, J., *concurring* ] ["[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings; ... nor does ... the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; *Mackall v. Angelone,* 131 F.3d 442, 447–449 (4th Cir.1997); *Ortiz,* 149 F.3d at 932; *Pollard v. Delo,* 28 F.3d 887, 888 (8th Cir.1994); *Lamp v. State of Iowa,* 122 F.3d 1100, 1104–1105 (8th Cir.1997); *Parkhurst v. Shillinger,* 128 F.3d 1366, 1371 (10th Cir.1997); *Williams v. Chrans,* 945 F.2d 926, 932 (7th Cir.1991); *Gilliam v. Simms,* 133 F.3d 914, No. 97–14, 1998 WL 17041 at *6 (4th Cir. Jan.13, 1998). Therefore, Petitioner cannot demonstrate cause for the default.

Even assuming that Petitioner could demonstrate cause for the procedural default, it would still be necessary for him to demonstrate actual prejudice as a result of the alleged violation of federal law or, in the alternative, demonstrate that failure to consider the claim would result in a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 750, 111 S.Ct. 2546. "Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court." *Rodriguez v. Young,* 906 F.2d 1153, 1159 (7th Cir.1990), *cert. denied,* 498 U.S. 1035, 111 S.Ct. 698, 112 L.Ed.2d 688 (1991). Prejudice has been defined as a denial of "fundamental fairness". A "showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied fundamental fairness at trial." *Murray v. Carrier,* 477 U.S. at 493, 106 S.Ct. 2639. Further, more

than "plain error" is necessary to establish "prejudice". *Engle v. Isaac,* 456 U.S. 107, 134–135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). A mere possibility of prejudice also fails to satisfy the actual prejudice prong of the cause and prejudice test. *United States v. Shaid,* 937 F.2d 228 (5th Cir.1991), *cert. denied,* 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). Here, the undersigned has reviewed the trial and post-conviction proceeding transcripts, as well as the pleadings and other exhibits filed by the parties, and for the following reasons can find no actual prejudice presented as to these two (2) issues even if the "cause" prong of the "cause and prejudice" test had been satisfied. *Wright v. Angelone,* 151 F.3d 151, 159–162 (4th Cir. 1998).

In Ground A(1), Petitioner contends that the solicitor's questioning or cross-examination of Petitioner's expert witness, Dr. James Evans, was improper and denied him a fair trial. Specifically, Petitioner contends that his counsel was ineffective for failing to object to allegedly improper testimony elicited by the prosecutor during the cross examination of Dr. Evans, which testimony interjected the issue of parole in the sentencing phase of Petitioner's trial. The record reveals that on direct examination, Dr. Evans testified concerning Petitioner's adaptability to prison, his borderline intellectual functioning, and the fact that he experienced psychotic symptoms when under stress. (R. pp. 2346–2347, 2349–2350). Dr. Evans also testified about his experience in evaluating men who are coming up for parole or a promotion within the prison. (R. p. 2344). During cross examination, Petitioner contends that the solicitor improperly elicited testimony from Dr. Evans which interjected the possibility of parole into the sentencing phase of Petitioner's trial. (R. pp. 2365–2367). The testimony at issue by Dr. Evans was as follows:

*Solicitor:* And have you seen people convicted of murder after they have been in prison? I'm not sure. My question is you said that you interviewed persons in the Department of Corrections as to classification, is that correct? Is that the correct terminology?

*Dr. Evans:* Do you mean the larger number, not the fifteen but the couple of thousand?

*Solicitor:* Yes, sir. I am not talking about that. I was just curious. I didn't know what that referred to. Is that inmates or—

*Dr. Evans:* Yes, sir.

*Solicitor:* Employees, or what?

*Dr. Evans:* No, inmates. These are men who when they come up for parole if they are in for murder or if they are in for a sex crime they have to be reevaluated psychologically every time they come up for parole or every time they come up for reclassification to a higher classification.

(R. p. 2365).

Dr. Evans further testified that individuals sentenced to murder and given a life sentence move up the classification system and acknowledged that they can receive more lee-way or freedom *"inside the prison"*. (R. pp. 2366–2367).

In his closing argument to the jury, Petitioner's counsel urged as a nonstatutory mitigating circumstance Petitioner's ability to adjust and adapt in prison. Petitioner's counsel also argued that Petitioner was a person who committed a terrible act "... and that he deserves to be incarcerated for the rest of his life." (R. pp. 2428, 2430). In its charge to the jury, the trial court instructed the jury. "Now, the terms of life imprisonment and a sentence of death are to be understood in their plain and ordinary meaning." (R. p. 2435). The jury subsequently inquired. "In the event of a decision for a life sentence what is the possibility of parole, if any?" (R. p. 2453). In response to the jury's inquiry, the Court charged the jury, "[t]he possibility of parole is not an appropriate consideration for you during your deliberations. Whether or not the defendant would or

would not be eligible for parole should not enter into your deliberations or factor into your decision. The terms a death sentence and a life imprisonment sentence are to be understood in their plain and ordinary meaning." (R. pp. 2455–2456).

Based upon a review of the record and the applicable caselaw, Petitioner has not shown the necessary prejudice to succeed on this claim. Petitioner's trial counsel Bartosh was asked the following question at the PCR hearing: "There was some question of you on direct examination concerning Dr. Evans' testimony during cross-examination. We mentioned parole. Did that stand out to you at the time as being inherently prejudicial?" Bartosh replied: "No, sir. And like I told Mr. Johnston, I mean, in roundabout way he did get into parole eligibility, but it didn't strike me that way at the time." Q. "Did the solicitor seek to use that testimony that way to interject the aura of parole?" A. "Not that I recall, no, sir." (R. p. 2690). Further, even if counsel had objected, the appropriate remedy would have been for the jury to receive a cautionary instruction as set forth in *State v. Norris*, 285 S.C. 86, 328 S.E.2d 339, 344 (S.C.1985), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (S.C.1991). Since the jury received the appropriate instruction prior to the return of its verdict, there is no reasonable probability the result would have been different if they had received the same instruction sooner. Accordingly, even assuming Petitioner could establish cause for the procedural default, he has failed to show the necessary prejudice to proceed on this claim.

With regard to Petitioner's other procedurally defaulted claim, that his counsel should have developed and presented mitigation evidence during the penalty phase of the Petitioner's trial regarding Petitioner's drug use (Ground A(2)), Petitioner contends that the only evidence presented to support his drug use as a mitigating factor was Petitioner's own testimony, and argues that counsel should have retained an expert to explain to the jury how Petitioner became addicted to crack cocaine, how it affected his ability to reason, and how it could lead to violent behavior. Petitioner also argues that his counsel failed to provide available evidence to bolster his credibility concerning his drug habit, although counsel "had in their possession voluminous records from Petitioner's prior admissions into drug treatment facilities, yet failed to ... retain an appropriate expert to review these materials."

Petitioner's counsel Bartosh testified at the PCR hearing that their mitigation strategy was to blend Petitioner's drug abuse and tragic family history. (R. pp. 2680–2682). For this strategy, counsel relied on the testimony of Petitioner, his family members, Dr. James Evans, and Ms. Janet Vogelsang, to support mitigation in the case. Counsel provided all of Petitioner's records to Ms. Vogelsang, a psychotherapist, and used Vogelsang's expertise in determining how to best present the evidence in the Petitioner's favor. Further, in reaching her own conclusions about the Petitioner, Vogelsang testified that she conducted interviews, checked documents and references, and did research to prepare her assessment. Vogelsang testified, "it would never make sense to rely on the information received from one person or the information received solely from the client. We do all of this time sometimes in excess of a hundred hours of work so that we can check our information and our facts across the board." (R. p. 2292). In addition to consulting with experts and conducting interviews, Vogelsang testified that she assembles and examines documents. "We try to get our hands on as much paper as we possibly can because so often those documents will either confirm or not confirm that the information we are gathering through the interviews is true. For example, if someone tells us they were a straight-A student and school records show otherwise then we know that we are not getting consistent information. So we

gather military records; social services records; birth, death, divorce records; medical, dental records; any kinds of records that are available on a client so that we can once again look for that consistency in the information." (R. pp. 2292–2293). Vogelsang testified that she conducted interviews, reviewed documents, and consulted with experts about the Petitioner's case. (R. p. 2304). Specifically, Vogelsang testified that she had three interviews with the Petitioner, four interviews with Petitioner's mother, three interviews with the Petitioner's brother, two interviews with one of Petitioner's sisters, an interview with two of Petitioner's other sisters, an interview with the director of Spartan Terrace [where Petitioner used to live], an interview with the director of Spartanburg Boys Home, an interview with a church member, the director of the Woodland Heights Recreation Center (who had had the opportunity to observe the Petitioner when he was a teenager at the recreation center), a Magistrate in Spartanburg county (who had had quite a bit of intervention with the Tucker family), and an interview with the mother of the Petitioner's child. (R. pp. 2304–2305). Vogelsang also testified that she reviewed Petitioner's school records, medical records, some of his military records, his mental health records from the Byrnes Center and Morris Village, newspaper articles about the crime. Petitioner's prison records, and Petitioner's birth records, as well as consulting with experts on trauma, family violence, and reviewing research. (R. pp. 2305–2306).

This extensive research provided support for Vogelsang's testimony regarding the Petitioner, his drug use, and the violence that he was subjected to as a child. Vogelsang testified that as a child, Petitioner was exposed to marijuana and cocaine, and was introduced to drugs around the age of eleven (11). (R. pp. 2313–2314,

2317, 2330–2332). Vogelsang testified that Petitioner was introduced to heavier drug use while in the military, and to crack cocaine at age 29. (R. pp. 2317, 2331). Vogelsang testified that Petitioner's drug use became worse and his depression spiraled downward. (R. p. 2330). When Vogelsang was cross-examined about the reliability of her information, she testified that although a lot of information was from interviews, she had also consulted with other experts and reviewed documents to find consistency. (R. p. 2335). As noted, Counsel for the Petitioner also introduced the testimony of Dr. Evans and of Petitioner's family members to bolster Petitioner's credibility as to his drug usage and to serve as mitigating evidence. Petitioner's counsel also used "the affect of crack cocaine" in his closing as a mitigating factor, and the Court's jury charge also specifically referred to "the affect of crack cocaine." (R. pp. 2313, 2349, 2428, 2444).

 As previously discussed, Petitioner's counsel Bartosh testified that their mitigation strategy was to blend Petitioner's drug abuse and tragic family history. (R. pp. 2680–2682). Counsel's strategy relied on the testimony of Petitioner, his family members, Dr. Evans, and Ms. Vogelsang to support these mitigation issues. Bartosh testified at Defendant's PCR hearing that, in hindsight, presenting Petitioner's medical records would not have hurt;[7] however, counsel relied on Vogelsang's expertise in determining how to best present the evidence in the Petitioner's favor. (R. pp. 2661–2662, 2672–2675). Petitioner now criticizes the decision of his counsel on how the evidence concerning his crack cocaine usage was presented to the jury. However, while the decisions of trial counsel are always subject to being second guessed with the benefit of hindsight, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel.

---

**7.** The actual medical and hospital records involving Petitioner's drug use and addiction

were not presented at trial. (R. pp. 2656).

*Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, and this Court should not scrutinize counsel's performance by looking at the decisions made in an after the fact manner. *Id.* at 688–689, 104 S.Ct. 2052; *Bunch v. Thompson,* 949 F.2d 1354 (4th Cir.1991), *cert. denied,* 505 U.S. 1230, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992); *Horne v. Peyton,* 356 F.2d 631, 633 (4th Cir.1966), *cert. denied,* 385 U.S. 863, 87 S.Ct. 119, 17 L.Ed.2d 90 (1966).

■ In summary, an informed decision by trial counsel should not be second guessed by a reviewing court. *Burger v. Kemp,* 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987); *see also Harris v. Dugger,* 874 F.2d 756, 762 (11th Cir.1989), *cert. denied,* 493 U.S. 1011, 110 S.Ct. 573, 107 L.Ed.2d 568 (1989). Specifically, where allegations of ineffective assistance of counsel are made, the question becomes whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. No such finding can be made here, nor is there evidence of any prejudice suffered by the Petitioner to defeat the procedural bar as to this claim. The record in this case shows that the jury was fully aware of Petitioner's history of drug addiction through the testimony of the Petitioner himself, Ms. Vogelsang, and Dr. Evans. Further, defense counsel discussed this issue in his closing arguments and the Court included a reference to this issue in its instructions. Petitioner has failed to show that there is a reasonable probability that, but for counsel's having handled Petitioner's history of drug abuse as he did, the result of the trial would have been a life sentence. Therefore. Petitioner has not shown the necessary prejudice with respect to this issue, even if he had made a proper showing of cause with regard to his procedural default. In any event, the fact that trial counsel may have made different decisions at trial does not show that a fundamental miscarriage of justice occurred. *Rodriguez v. Young, supra; Murray v. Carrier, supra; Bolender v. Singletary,* 898 F.Supp. 876 (S.D.Fla.1995).

In conclusion, after a review of this record and the arguments presented to the Court with regard to issues A(1) and (2), the undersigned finds that Petitioner has failed to show either cause and prejudice or a fundamental miscarriage of justice. Nor has he shown actual innocence. *Rodriguez,* 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"], citing *Murray v. Carrier,* 477 U.S. at 496, 106 S.Ct. 2639; *Bolender,* 898 F.Supp. at 881. Therefore, Petitioner's claims for relief as set forth in Issues A(1) and (2) are procedurally barred, and should be dismissed. *Id; see* 28 U.S.C. § 2254; *Wainwright v. Sykes, supra; Murray v. Carrier, supra; Williams v. Taylor,* 163 F.3d 860, 871–72 (4th Cir.1998); *Bolender v. Singletary, supra.*

### III.

Petitioner contends in issue A(3) that trial counsel was ineffective in failing to invoke the provisions of S.C.Code § 14–7–1330 during the penalty phase deliberations. Section 14–7–1330 provides in the relevant part that,

When a jury, after due and thorough deliberations upon any cause, returns into court without having agreed upon a verdict, the court may state anew the evidence or any part of it and explain it anew the law applicable to the case and may send it out for further deliberations. But if it returns a second time without having agreed upon a verdict, it shall not be sent out again without its own consent unless it shall ask from the court some further explanation of the law.

Petitioner argues that the jury returned three times indicating that they were having difficulty in reaching an unanimous decision, twice stating that they were deadlocked. Petitioner argues that counsel should have objected to the Court's *Allen* charge on the basis of § 14–7–1330, and that he was prejudiced by counsel's failure to do so. Trial counsel testified at the PCR hearing that he was unaware of § 14–7–1330 at the time of Petitioner's trial, and that he should have objected to the charge based on this statute to preserve the issue. (R. pp. 2644–2646).

As previously noted, Petitioner's PCR hearing was held on March 18, 1997, before the Honorable Thomas J. Ervin, South Carolina Circuit Judge. At this hearing, Petitioner had the burden of proving the allegations in his petition. *Butler v. State*, 286 S.C. 441, 334 S.E.2d 813, 814 (S.C.1985), *cert. denied*, 474 U.S. 1094, 106 S.Ct. 869, 88 L.Ed.2d 908 (1986). Following this hearing, the PCR Court made relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17–27–80 (1976), as amended. *Tucker v. State of South Carolina*, No. 96–CP–42–1452 (R. pp. 2766–2845). In an order dated May 8, 1997, Judge Ervin denied Petitioner's application for PCR, finding that Petitioner had not received deficient performance by his trial counsel and therefore had suffered no prejudice. *Id.* Judge Ervin specifically found that Petitioner's trial counsel was not ineffective in failing to object to the Court's *Allen* charge on the basis of § 14–7–1330. (R. pp. 2800–2806).

The PCR judge made, *inter alia*, the following specific findings of fact with regard to this issue: 1) that the jury retired to deliberate at 1:33 p.m. (R. p. 2452); 2) that at 5:02 p.m., the jury returned with a question regarding parole eligibility (R. p. 2455–56); 3) that later on that afternoon, the jury sent a note stating "we are deadlocked at 10–2 for the death penalty. We are not making any progress. We would like to hear Richard Tucker's testimony and then continue our deliberations until 10:00 p.m.—unless we reach a verdict before then,"; 4) that at 5:55 p.m., the jury returned to rehear Petitioner's testimony (R. pp. 2457–2458); 5) that the jury returned to the jury room to deliberate at 6:53 p.m. (R. p. 2458); 6) that later that evening the jury sent a note indicating they would not be able to reach a decision that night and requesting that they be allowed to resume deliberations in the morning. The trial judge granted the request and the jury retired at 8:05 p.m. (R. pp. 2458–2459); 7) that sometime during deliberations the next morning, the jury indicated they were having difficulty in arriving at a unanimous decision. When the judge indicated to counsel that he intended to give the jury additional instructions, defense counsel requested a "watered down" version of the *Allen* charge and requested the trial judge to instruct the jury that if they could not render a unanimous decision, Petitioner would be sentenced to life imprisonment (R. pp. 2460–2461); 8) that the jury returned to the courtroom at 10:44 a.m., at which time the trial judge gave an *Allen* charge (R. pp. 2461–2462); 9) that the jury returned to the jury room to deliberate at 10:47 a.m. (R. pp. 2462–2463); 10) that the jury returned to the courtroom at 12:27 p.m. to return its verdict (R. p. 2464); 11) that counsel Bartosh testified that he was not aware of the statute (§ 14–7–1330) at the time of the trial and stated that "an argument could be made that [the statute was applicable in Mr. Tucker's trial.]"; 12) that the statute was not applicable to the facts of this case; 13) that when the jury returned at 5:02 with a question regarding parole eligibility, "[it] is clear that, at that time, the jury had not had due and thorough deliberation upon [the] cause7D"; 14) that when the jury returned a second time, stating they were deadlocked at 10–2, it was to re-hear the testimony of the Petitioner; 15) that at that time, the jury clearly had not had "due and thorough deliberation upon [the] cause." They needed to rehear the testimony; 16) that later that evening, the jury itself requested

that they be allowed to retire and *return the next morning to deliberate;* 17) that clearly, then, by the jury's own admission, they had not yet had "due and thorough deliberation upon [the] cause" and they consented, and in fact requested, to come back and deliberate; 18) that the next morning was the *first* time the jury had truly indicated it was unable to reach a decision; 19) that it was at that time the judge administered the *Allen* charge, after which time the jury returned with a verdict, never indicating again that it was unable to do so; 20) that it is clear that the jury was sent to its jury room for further deliberations only *once* after the trial judge administered the *Allen* charge; 21) that at all times prior to the giving of the *Allen* charge, the jury had not yet completed its deliberations and had willfully consented to return to the jury room for further deliberations; 22) that because § 14–7–1330 did not apply to the facts of this case, Petitioner was unable to show that his due process rights were denied or that Sixth Amendment prejudice was shown; and 23) that even if counsel had sought to invoke the provisions of § 14–7–1330, the trial judge, acting in accordance with the law and with an understanding of § 14–7–1330 and the history of the deliberations, would have denied the request and acted as he had in giving the *Allen* charge. (R. pp. 2803–2806).

■■■ Substantial deference is to be given to the state court's findings of fact. *Jeffries v. Wood,* 114 F.3d 1484, 1498 (9th Cir.1997); *Carter v. Johnson,* 110 F.3d 1098, 1108 (5th Cir.1997), *vacated on other grounds,* —— U.S. ——, 118 S.Ct. 409, 139 L.Ed.2d 313 (1997); *Houchin v. Zavaras,* 107 F.3d 1465, 1469 (10th Cir.1997).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court, a determination of a factual issue made by a state court shall be presumed correct. The applicant shall have the burden of rebutting

the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).[8]

Petitioner has failed to rebut any of these findings by clear and convincing evidence and, therefore, the state court findings of fact are presumed correct.

■■■ However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254, where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, the federal court must reach an independent conclusion. *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052; *Pruett v. Thompson,* 996 F.2d 1560, 1568 (4th Cir.1993), *cert. denied,* 510 U.S. 984, 114 S.Ct. 487, 126 L.Ed.2d 437 (1993) (citing *Clozza v. Murray,* 913 F.2d 1092, 1100 (4th Cir.1990), *cert. denied,* 499 U.S. 913, 111 S.Ct. 1123, 113 L.Ed.2d 231 (1991)). Nevertheless, "[the] new standard of review [under the Reform Act] for mixed questions of law and fact demands considerable deference to the decisions of state courts, akin to the 'clearly erroneous' standard." *See Carter,* 110 F.3d at 1108; *Jeffries v. Wood, supra.*

Upon review of the record and materials in the file consistent with the applicable caselaw, I do not find that the Petitioner was denied effective assistance of counsel. Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052. In *Strickland,* the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of

8. *See* The Reform Act.

reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir.), *cert. denied*, 519 U.S. 1016, 117 S.Ct. 527, 136 L.Ed.2d 414 (1996). Petitioner has failed to meet any of these standards, or show that the state court's findings are unreasonable. *Carter*, 110 F.3d at 1108 [Under the Reform Act, when considering mixed questions of law and fact, courts ... are obliged to respect the judgment of the state court, provided it does not constitute an 'unreasonable application' of clearly established law as determined by the [United States] Supreme Court ... If reasonable jurists could disagree [about the state court's decision, then] the state court decision on a mixed question of law and fact is not 'an unreasonable application of federal law....'].

In order to prevail on a Sixth Amendment ineffective assistance of counsel claim, the Petitioner must satisfy both prongs of the *Strickland* test. *See* Discussion, *supra*. The state PCR court found that the first time the jury returned was at 10:44 a.m. on the morning of the day of the verdict, and that the statute authorizes that the jury be sent back for further deliberations. (R. pp. 2461–2463). The Petitioner has not met his burden to show that this finding was error. Further, the record shows that the jury was sent to the jury room for further deliberations only once after the trial judge administered the *Allen* charge, and that at all times prior to the giving of the *Allen* charge, the jury had not yet completed its deliberations and had willfully consented to return to the jury room for further deliberations. Accordingly, § 14–7–1330 is not applicable under the facts of this case. *See also State v. Pauling*, 322 S.C. 95, 470 S.E.2d 106, 109 (S.C.1996) [sending a jury back after a

second deadlock not statutory error where there is consent to further deliberations]; *Gamble v. Travelers Ins. Co.*, 251 S.C. 98, 160 S.E.2d 523, 527–528 (S.C.1968); *Edwards v. Edwards*, 239 S.C. 85, 121 S.E.2d 432, 436 (S.C.1961) [consent may be implied]. Further, even if counsel had objected on the basis of § 14–7–1330, this objection would have been denied based on the law and the record of deliberations in this case. Therefore. Petitioner has failed to show he suffered any prejudice as a result of counsel's failure to so object. This issue is without merit and should be dismissed. *See* 28 U.S.C. § 2254(d)(1) and (2); *Green v. French*, 143 F.3d 865 (4th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 844, 142 L.Ed.2d 698 (U.S.1997); *Fitzgerald v. Greene*, 150 F.3d 357, 362 (4th Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 389, 142 L.Ed.2d 321 (1998).

## IV.

Petitioner contends in issue A(4) that his trial counsel's performance on each of the issues raised in Ground A of the Petition was unreasonable, and that counsel's deficiencies, whether taken individually or collectively, prejudiced petitioner. *Strickland v. Washington, supra; see Kyles v. Whitley*, 514 U.S. 419, 440, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Based upon the arguments, evidence, and findings presented previously herein, *supra*, this claim is without merit and should be dismissed.

## V.

Petitioner contends in his Ground B that his appellate counsel was ineffective in failing to raise for review on direct appeal trial counsel's *per se* objection to the *Allen* charge. At trial, counsel objected to the *Allen* charge on the grounds that the instruction given by the Court did not include language that, if the jury should not reach a unanimous verdict, that would constitute a final decision of life imprisonment, and that it was in general too coercive in nature. (R. pp. 2460–2463). How-

ever, on appeal, appellate counsel asserted that the Court's *Allen* charge, under the circumstances of this case, was unduly coercive because it had been revealed that only a single juror was holding out for a life sentence. (R. pp. 2616, 3136). The South Carolina Supreme Court found the issue raised by appellate counsel to be procedurally barred, as it had not been preserved at trial. *State v. Tucker*, 462 S.E.2d at 264–265. Petitioner argues that appellate counsel's failure to raise on appeal the "meritorious argument" preserved by trial counsel resulted in ineffective assistance of appellate counsel, and that he was prejudiced as a result.

The PCR court rejected this claim. (R. pp. 2781–2800). After review of the record and evidence, the undersigned finds that the State court's findings are supported by the evidence and meet the standards of *Green* and *Fitzgerald*. *See* 28 U.S.C. § 2254(d)(1) and (2). In order to prevail on a Sixth Amendment ineffective claim, the Petitioner must satisfy both prongs of the *Strickland* test. *See* Discussion, *supra*. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, in order to show prejudice a petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Mazzell*, 88 F.3d at 269.

Based upon a review of the charge in this case and the applicable caselaw, the Petitioner has failed to show ineffective assistance of counsel with regard to this claim. The giving of an *Allen* charge, standing alone, is clearly not error. *United States v. Thomas*, 449 F.2d 1177 (D.C.Cir.1971).

When considered in context and under all the circumstances, the supplemental charge did not impermissibly coerce the jury to return a death sentence. The supplemental charge is similar to the traditional *Allen* charge long approved by the Supreme Court on the ground that it is an attempt to secure jury unanimity which reasoning applies with even greater force here since the charge does not speak specifically to the minority jurors. Although not without constitutional weight, the fact that one of the purposes served by such a charge—the avoidance of the societal cost of a retrial—is not present here because [South Carolina] law requires the Court to impose a life sentence if the jury is hung, does not render the charge impermissible due to the Due Process Clause and the Eighth Amendment in light of the State's strong interest in having capital sentencing juries express the conscience of the community on the ultimate question of life or death.

*Lowenfield v. Phelps*, 484 U.S. 231–232, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) [Syllabus]. The continued validity of the Supreme Court's observations in *Allen* are beyond dispute. *Lowenfield*, 484 U.S. at 238, 108 S.Ct. 546; *see State v. Yates*, 280 S.C. 29, 310 S.E.2d 805, 811 (S.C.1983), *vacated on other grounds*, 474 U.S. 896, 106 S.Ct. 218, 88 L.Ed.2d 218 (1985) [*Allen* charge in capital case].

The jury's role was to deliberate and to attempt to reach a unanimous verdict. The fact that there was a statutorily defined default rule in case the jury could not agree does not change this fact. Indeed, it does not necessarily mislead a jury regarding its role to avoid disclosing what will happen if the jury fails to achieve unanimity. If [Petitioner was] correct here, the Supreme Court would not have decided *Lowenfield v. Phelps*, the way it did. In that case, the Court approved the use of an *Allen* charge in a capital case. *Id.* at 237–238, 108 S.Ct. 546. It cited approvingly the Court's statement in *Allen* that "[t]he

very object of the jury system is to secure unanimity by comparison of views and by arguments among the jurors themselves."

*Coe v. Bell,* 161 F.3d 320, 340 (6th Cir. 1998). Based upon the facts in this case, the Petitioner has also not shown that, even if appellate counsel had raised this issue, there is a reasonable probability that the result of the proceeding would have been different.

Petitioner's appellate counsel testified at the PCR hearing that he did not raise the *Allen* issue presently before the Court, and would not even now raise the issue in hindsight. (R. pp. 2631–2633). Appellate counsel testified that "I knew that it was not a Constitutional requirement that you not give an *Allen* Charge. It's just not a Constitutional problem. I also knew that and know that there is state law that the jury—you don't have to tell the jury that a nonunanimous decision will result in life. So I don't see those two things being put together becoming a big error suddenly." (R. p. 2632). Appellate counsel testified that he raised the specific *Allen* issue he raised for strategic reasons. (R. pp. 2618, 2620, 2630–2632, 2637–2638).

It is clear that Appellate counsel has no constitutional duty to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to raise such issue on appeal. *Jones v. Barnes,* 463 U.S. 745, 751–754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Counsel must be allowed to exercise his reasonable professional judgment in selecting those items most promising for review. *Id.* at 752–753, 103 S.Ct. 3308. A brief that raises every colorable issue runs the risk of burying good arguments. *Id.* at 752–753, 103 S.Ct. 3308. *Griffin v. Aiken,* 775 F.2d 1226, 1235 (4th Cir.1985), *cert. denied,* 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). "Given that it was a strategic decision on appellate counsel's part based on what we consider to be reasonable professional judgment, it is not proper to second-guess the judgment of appellate counsel so

as to impose a duty to raise every colorable claim." *Griffin,* 775 F.2d at 1235.

Petitioner now criticizes the decision of his counsel on the *Allen* issue he raised in Petitioner's appeal. As previously discussed, the decisions of counsel are always subject to being second guessed with the benefit of hindsight; however, tactical and strategic choices made by counsel after due consideration do not constitute ineffective assistance of counsel, and there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. This Court should not scrutinize counsel's performance by looking at the decision in an after the fact manner. *Strickland,* 466 U.S. at 688–689, 104 S.Ct. 2052; *Bunch v. Thompson, supra; Horne,* 356 F.2d at 633; *Burger v. Kemp, supra; see also Harris v. Dugger, supra.* Therefore, Petitioner has failed to show that the State Court's findings on this issue are unreasonable, that his appellate counsel's performance was deficient, or that he was prejudiced by his appellate counsel's performance. This issue is without merit and should be dismissed. 28 U.S.C. § 2254(d)(1) and (2); *Green,* 143 F.3d 865; *Fitzgerald,* 150 F.3d at 362.

### *Conclusion*

Based on the foregoing, Petitioner's petition for Writ of Habeas Corpus should be **denied,** and this Petition should be **dismissed.**

Jan. 15, 1999.